### 48424. HOWE et al. v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.

ARGUED SEPTEMBER 10, 1973 — DECIDED OCTOBER 1, 1973 — REHEARING DENIED OCTOBER 29, 1973 —

108

*J. Sewell Elliott,* for appellants.

*Jones, Cork, Miller & Benton, Carr G. Dodson, Hubert C. Lovein, Jr.,* for appellee.

DEEN, Judge. Georgia has not until now construed the clause in life insurance policies denying coverage where death results "from travel or flight in or descent from" an airplane. This and similar provisions have been the subject of litigation elsewhere under circumstances where the airplane sustained a forced landing and the insured, after surviving the crash, died before rescue. Decisions are widely diverse and basically depend on the construction which the court gives in a proximate cause context. That is, where proximate cause is thought of in its ordinary negligence context as efficient cause, or as a cause which sets in motion other events leading to the injury, courts construe death from forces encountered after the plane comes to rest, whether on land or water, but which result from the inclemency of that spot, as being the result either of "travel or flight" or from "descent" and thereby deny recovery. In this regard the appellee cites Wendorff v. Mo. State Life Ins. Co., 1 S. W. 2d 99 ("while in or on any . . . device for aerial navigation or in falling therefrom or therewith or while operating or handling any such vehicle"); Neel v. Mutual Life Ins. Co. of New York, 131 F2d 159 ("participation in aeronautics"); Green v. Mutual Benefit Life Ins. Co., 144 F2d 55 ("by reason of any aerial flight or journey"); Order of United Commercial

Travelers of America v. King, 161 F2d 108 ("participation in aviation"); Rossman v. Metropolitan Life Ins. Co., 71 FSupp. 592 ("as a result, directly or indirectly, of travel or flight in any species of aircraft"); Hobbs v. The Franklin Life Ins. Co., 253 F2d 591 ("or in consequence of having been in or on . . . or in falling therefrom . . . or handling any such vehicle or device"); Rauch v. Underwriters, Lloyd's of London, 320 F2d 525 ("operating or serving as a member of a crew of an aircraft"); Howard v. Equitable Life Assur. Soc. of the U. S., 274 N. E. 2d 819 ("travel or flight in, or descent from, any aircraft") and Elliott v. Mass. Life Ins. Co., 388 F2d 362. In Elliott the double indemnity provision excluded death resulting "directly or indirectly" from travel or flight in or descent from aircraft. The single benefit life insured had the same exclusion, omitting the words "directly or indirectly." The exclusion was directed to any occupant of the plane who "has any duty incident to the operation of said aircraft." The insured, pilot and sole occupant of the plane, went into a spin at 50,000 feet and plunged into the ocean. Rescue helicopters arrived within 40 minutes; the pilot's head was under water and his parachute and gear prevented him from being lifted into the life raft. The court held: "Death by drowning . . . from an airplane downed in the ocean results from a risk of flight against which the [exclusionary] clauses are directed. True, the flight itself had ended . . . [but] in an ominous manner . . . During the descent or after entry into the water, he became entangled with the shroud lines of his parachute; . . . caused his life preserver to move from its normal position to a position under his armpits. Of course, he did not anticipate that occurrence, but it was nonetheless a result of his efforts to free himself. It was not an independent cause but a link in the unbroken chain of causation." Thus, where the death occurred more or less instantaneously after the descent, the court found the proximate cause factor present, and treated the drowning almost as a part of the descent.

It is interesting to note that the Howard case, supra, involved the other crew member whose body was rescued at the same time and place as that of the insured here. Howard's death by drowning, which occurred several hours after evacuation, seems to have been caused by water leaking into his suit rather than from faulty inflation of the life vest, but this is doubtless a distinction without a difference, for the court went on to explain that the suit was a part of the equipment aboard the aircraft, and since ditching the craft necessitated using the suit, this was a part of the travel or

flight in the aircraft. In this case the proximate cause concept is applied in a manner familiar to negligence law, which frequently looks to the efficient cause which sets other and subsidiary causes into motion.

The appellant, on the other hand, cites various cases where emphasis is placed on the familiar principles that insurance policies, if susceptible of more than one construction, are construed against the corporation whose experts drafted them, and that the burden is always on the insurer to bring the case within the exclusion, not on the beneficiary to negate it. So construed, "travel or flight in" is given its ordinary significance and relates to an airborne vehicle; "descent from" definitely includes the impact which halts the descent, but, where the occupant comes to rest unharmed on either air or water, and maintains his position there for a significant length of time the causal chain breaks, and the fact that the insured meets his death before rescue, even though, had the plane not suffered misadventure he would not have been in the vicinity or predicament which caused his death, is not alone sufficient to exclude the policy holder or his beneficiaries from coverage. This is most obvious in a case like Bull v. Sun Life Assur. Co. of Can., 141 F2d 456, where a crippled seaplane made a safe water landing but the insured was killed by enemy gunfire while trying to launch a lifeboat. But the same result was also reached in Eschweiler v. Gen. Acc. Fire & Life Assur. Corp., 241 F2d 101, where the plane crashed on an icy lake a half mile from shore and the insured died before reaching help; in McDaniel v. Standard Acc. Ins. Co., 221 F2d 171, where the insured, who landed safely, was drowned while attempting to swim to shore; Chambers v. Kansas City Life Ins. Co., 319 P2d 387, where the crippled plane came to rest in a desert and the insured died before reaching safety ("The mere fact that the insured would probably not have been there if he had not gone on this plane ride is not sufficient to establish that his death occurred indirectly from this flight") and in Security Mutual Life Ins. Co. v. Hollingsworth, 459 P. 2d 592. In the latter case the exclusion was for death resulting *directly or indirectly* from travel or flight in aircraft, except as a passenger on a commercial plane. The insured was a passenger in a private airplane which, while circling a lake, struck the water and sank 200 yards from shore. The insured failed in his attempt to swim to safety. While some of the evidence indicated that this was because he became entangled with fishing lines, the court held this not important, since the evidence was undisputed that death

occurred from drowning, and drowning was not an excluded hazard. It pointed out, quoting from Tierney v. Occidental Life Ins. Co., 265 P. 400, that confusion frequently results because the airplane flight and the death are close together in point of time, and added: "The burden then was upon defendant to prove death resulted directly or indirectly from having been a passenger in the plane. It was essential to such defense that the defendant show insured's participation in the flight had a causative relation to his death. The evidence showed the flight had terminated without injury to insured, and all participants were in a position of at least potential safety."

The same is true in the present case. Four men survived the entry of the airplane into the sea. Two lived; two died by drowning, after surviving for six or seven hours. Had the policy provision involved here contained the words *"directly or indirectly resulting from"* we might re-evaluate this position, but, construed in its narrow, literal and ordinary meaning, and observing that death by drowning is not an excluded risk, the death here is too remote from either the travel or the descent to be a part of it. If the insurer had intended to exclude double indemnity payments from death resulting from the failure of survival equipment or from intense or prolonged exposure, etc., following a crash of an airplane, a clause containing a clear statement of those exclusionary causes should have been in the policy. For an insurer to insist that it will be insulated from double indemnity coverage in those instances solely by application of the principles of "proximate cause," is to expect the courts to stretch, expand and further confuse that already difficult concept. It was therefore error to grant the defendant's motion for summary judgment.

*Judgment reversed. Bell, C. J., and Quillian, J., concur.*