[Civ. No. 5595.   Fourth Dist.   Dec. 18, 1957.]

CAMILE J. CHAMBERS, Plaintiff and Appellant, v. KANSAS CITY LIFE INSURANCE COMPANY, Defendant and Appellant.

C. Paul DuBois for Plaintiff and Appellant.

Walker, Curry, Eilers & Wehrle and William H. Eilers for Defendant and Appellant.

BARNARD, P. J.—This is an action to recover death benefits under a life insurance policy containing an Aviation Provision exclusion.

The policy was issued on March 5, 1953, to Charles H. Chambers, the plaintiff's husband. The insured, a licensed pilot, signed the insurer's "Aviation Exclusion Rider Agreement" authorizing the inclusion in the policy of this aviation provision. This provision, insofar as material here, provides that "If the insured shall die as a result, directly or indirectly, of service, travel or flight in any species of aircraft, or as a result of descending therefrom or therewith," the amount payable under the policy is to be limited to the amount of the premiums paid, with interest.

On the morning of July 18, 1953, the insured and one

Richard Walko took off in a borrowed private airplane from an airport in Los Angeles County destined for Las Vegas, Nevada. This is the last heard of the insured until October 27, 1953, when the remains of his body were found in a desert area known as the Kingston Wash, some 30 or 35 miles from the nearest town of Tecopa. On October 31, the airplane was found by a deputy sheriff about 20 miles from the insured's remains at a point on the slopes approaching Kingston Peak, this point being about 16 miles southeasterly from the center line of the C.A.A. established radio and flying route from Los Angeles to Las Vegas. The right landing wheel of the plane was sheared off, the right wing was bent upward at a right angle, and the tips of both ends of the wooden propeller were shattered. There was no damage to the interior of the plane.

When the insured's body was found there was no evidence of predeath injuries, and a deputy coroner testified as an expert that the insured's death was caused by "exposure, dehydration, exhaustion." There was evidence that the insured had walked about 20 miles, and his tracks were trailed for about 12 miles and found to follow a horseshoe or looping course. The remains of Walko were found about 10 miles from those of the insured, and there were indications that they had gone some distance together and then separated. There was evidence that the particular area where the plane was found was a series of gulleys and washes covered with rocks and desert vegetation. There was evidence that at the time it was found the airplane had no gasoline in the tank and no radio receiving batteries, but the man who removed the plane late in November testified that he started the motor without putting in gasoline and that there were such batteries. Whether anyone had visited the plane prior to October 31, or shortly thereafter, apparently was not known. There was evidence that in similar desert areas foxes, coyotes, bobcats and rattlesnakes are sometimes seen but a witness testified that he had never seen any rattlesnakes in this general area, that he had found evidence only of coyotes there, and that he had never known a coyote to attack a live human being. There was evidence that animals had torn away the flesh and muscles from the body of the insured and evidence of small punctures on the skin of his lower legs. There was evidence that some man-made habitations and works existed in nearby areas, and the insured had passed within 2½ miles of a water supply in the course of his walk. There was evidence that the insured

was young and strong, and some evidence which would justify the inference that his training and condition were such as would indicate an ability to survive under ordinary adverse conditions in land areas.

A jury returned a verdict in favor of the plaintiff in the sum of $6,227.32 and the defendant has appealed from the judgment which followed. The defendant's contentions are that it appears as a matter of law that the plaintiff cannot recover, in view of this aviation provision, because his death occurred indirectly as a result of the insured's flight in this airplane; that the evidence conclusively shows that the airplane crash-landed in a remote desert area in mid-July and the insured wandered in the desert for two days, with the result that he died from heat, exhaustion and lack of water; that the court erred in denying defendant's motion, prior to the impanelment of the jury, to withdraw the case from the jury since the action involved only a question of law and no material issue of fact; and that the court erred in denying defendant's motions for a nonsuit, for a directed verdict, and for a judgment notwithstanding the verdict. It does not clearly appear from the evidence whether this airplane crashed during its main flight or whether it crashed in taking off after the insured had stopped for some purpose of his own. Because of the condition in which the plane was found it could well be inferred that the insured had stopped for some purpose and that the plane crashed in again taking off at a relatively low speed. There are a number of other conflicts in the evidence and in view of the evidence as a whole and the wording of this aviation provision it would reasonably appear that there were issues of fact which should properly be submitted to the jury.

The appellant relies on *Rossman* v. *Metropolitan Life Ins. Co.*, 71 F.Supp. 592; *Neel* v. *Mutual Life Ins. Co.*, 131 F.2d 159; *Green* v. *Mutual Ben. Life Ins. Co.*, 144 F.2d 55; *Order of United Commercial Travelers* v. *King*, 161 F.2d 108; and *Pittman* v. *Lamar Life Ins. Co.*, 17 F.2d 370, and contends that there is no valid distinction between a forced landing on the water with a flyer uninjured and death by drowning, and a forced landing in a desert area with the passenger uninjured and death resulting from the perils of the desert while he is trying to make his way to a place of safety. The respondent relies on such cases as *Tierney* v. *Occidental Life Ins. Co.*, 89 Cal.App. 779 [265 P. 400] ; *McDaniel* v. *Standard Acc. Ins. Co.*, 221 F.2d 171; *Eschweiler* v. *General Acc. Fire & Life Assur. Corp.*, 136 F.Supp. 717; and *Bull* v. *Sun Life*

*Assur. Co.*, 141 F.2d 456, in which recovery has been allowed because of circumstances subsequent to the landing of the airplane.

In some of the cases, where the policy provision excluded coverage for death resulting from "participation" in aeronautical activity or in aviation, the courts have denied recovery where death occurred as a result of certain circumstances after the plane landed. For example, in *Neel* v. *Mutual Life Ins. Co.*, *supra*, where the insured landed in the Atlantic ocean the court said that the flight and not the drowning was the predominant cause of death, and in *Pittman* v. *Lamar Life Ins. Co.*, *supra*, where the insured had landed and was struck by the propeller while on his way to his parked car it is said: "Aeronautic activities of one who takes such a trip do not begin or end with the actual flight but include his presence or movements in or near to the machine incidental to beginning or concluding the trip." In general, such cases have held that things which happen later are not within the exclusion clause unless they are a part of the flight itself or of leaving the plane. Even under the broader exclusion provisions considered in those cases it was recognized that exclusion of liability depended upon what occurred in the actual flight or landing, or in or near the plane in connection with entering or leaving it.

The exclusion provision here in question appears to be more narrow and limited in its scope than those involved in the cited cases. By its terms it is limited to where the insured dies as a direct or indirect result of his travel or flight in an airplane, or of descending "therefrom or therewith." The latter clause would seem to indicate an intention that the exclusion provided for would end when the insured had safely descended from the plane. In other words, that it was intended to exclude death resulting from the flight itself, or from leaving the plane, and not from some subsequent peril. All of the cases seem to hold that the intention of the parties in agreeing to the exclusion clause is the controlling element. From the language here used it could reasonably be held that the intention of the parties as expressed in the policy was to exclude from coverage only the danger normally or usually attached to riding in an airplane, or descending therewith or therefrom. It may well be doubted that these parties intended to exclude death resulting from other conditions long after a safe descent from a plane had been completed. Questions of fact were here present and it cannot

be said that the sole issue was one of law. Because the word
"indirectly" was also used it does not necessarily follow that
this exclusion provision was intended to apply where a safe
landing had been made and where death occurred a couple of
days later and miles away from the airplane, as a result of
other circumstances and conditions.

It does not necessarily follow that the same rule should be
applied here as that applicable where a plane lands on the
ocean where the drowning may well be considered an indirect,
if not a direct, result of the flight. Where a plane goes down
at sea a safe descent is often impossible, and drowning which
follows is in a practical sense a part of the descent. In a
forced landing on terra firma within this country a very
different situation may well appear. Here a safe landing,
insofar as anything having to do with the insured's leaving the
plane is concerned, could be and was made. The insured did not
die as a direct result of riding in this plane or of descending
therefrom, and the only possible indirect connection between
the plane ride and his death is the fact that he arrived in that
locality by airplane. The conditions which caused his death
were met after the airplane ride was safely completed, and
the same conditions would have existed had he arrived in
any other manner. After he left the plane and started to walk
he was subject to the same perils he would have been if he
had arrived there in an automobile and the automobile had
broken down. While there are perils in such desert areas they
are not necessarily fatal and many persons who arrive in
such areas in other ways are able to survive while others are
not, depending upon many factual circumstances. The mere
fact that the insured would probably not have been there if
he had not gone on this plane ride is not sufficient to establish
that his death occurred indirectly from this flight. That ele-
ment appears in any automobile accident but it can have no
controlling effect. If the insured had landed safely at a city
airport and was killed in an automobile accident while en
route to a hotel, it might be true that he wouldn't have been
in that automobile had he not taken the plane ride, but this
could not reasonably be said to have resulted indirectly from
his ride in the plane, or his exit therefrom, within the
meaning and intent of this exclusion clause. This exclusion
clause is in no way conditioned upon a safe arrival at an
intended destination. It may reasonably be interpreted as
intended to relate to death resulting from the flight itself or
from leaving the plane, and not from perils thereafter en-

countered. There are well-known dangers on highways and city streets, as well as in desert areas, and death as a result of any of those dangers would clearly come within the general provisions of this policy. This exclusion provision, limited as it is, should not be held as a matter of law to automatically exclude coverage because of this possible danger which arose only after a safe descent from the plane had been made. If there had been any intention to include such a peril as this in the exclusion clause the insurance company should have used language more clearly showing such an intent. The language used in this exclusion provision could reasonably be interpreted in either of two ways, and issues of fact were presented which were properly submitted to the jury.

The appellant further contends that the court erred in admitting testimony as to the presence of wild animals in this area, in giving instructions on proximate cause and on ambiguity and the meaning of the exclusion provision, and in failing to instruct the jury as to the language used in section 532 of the Insurance Code. It is argued that there was no ambiguity in the policy language, and that in view of the admitted facts there was no debatable issue as to proximate cause for the jury to determine. These contentions are, in practical effect, based upon the main contention that the sole issue in this case was one of law and not one of fact. Under our views with respect to the main contention made no prejudice appears, and it is unnecessary to consider these contentions in detail.

The plaintiff has appealed from the order taxing her costs, which order deleted or reduced certain amounts claimed by her. The record sufficiently supports the order made, and no abuse of discretion appears.

The judgment and order are affirmed. Plaintiff to recover costs on appeal.

Mussell, J., concurred.

A petition for a rehearing was denied January 15, 1958, and the petition of defendant and appellant for a hearing by the Supreme Court was denied February 11, 1958.