Willard R. GRIFFITH, Plaintiff,

v.

CONTINENTAL CASUALTY
COMPANY, Defendant.

Civ. A. No. 3–79–0611–H.

United States District Court,
N. D. Texas,
Dallas Division.

Feb. 2, 1981.

Ken Fuqua, Wilson, Berry, Jorgenson & Fuqua, Dallas, Tex., for plaintiff.

M. Leigh Bartlett, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

SANDERS, District Judge.

For ten years prior to the morning of October 28, 1975, Lee R. Griffith had been a

pilot for Delta Air Lines, experienced in flying both commercial and smaller private aircraft. On that morning, at approximately 10:00 a. m., Griffith took off from Love Field in Dallas, Texas, in his private twin-engine Beechcraft plane, accompanied only by a friend, Fred Zimmerman.

Griffith told his wife that he planned to fly to Florida that morning, but no flight plan was filed. After its departure from Love Field, the plane did not arrive in Florida and, in fact, was never sighted again by anyone known to the parties herein. Nor has anyone seen or heard from Griffith or Zimmerman since that morning. Various land and aerial searches were made but neither the body nor the plane of Lee R. Griffith has ever been found. Griffith has been declared legally dead pursuant to a judgment entered March 5, 1979, in the Northern District of Texas (*Griffith v. Delta Air Lines, Inc.*, CA–3–78–0193–C).

By virtue of his employment with Delta, Griffith was an "Insured Employee" under an Employee Group Accident Insurance Policy issued by Defendant Continental Casualty Company ("Continental") to Delta Air Lines, Inc. At all times pertinent to this litigation the accidental death insurance policy was in full force and effect, and Plaintiff Willard R. Griffith, the decedent's father, was the named beneficiary under the policy.

Prior to the institution of this suit, Plaintiff notified Defendant Continental of his son's disappearance and secured a judicial determination of his death. Continental responded by giving written notice that it denied liability to Plaintiff under the accidental death policy. This Court has been called upon, based on the stipulated facts submitted by the parties, to construe various provisions of the Continental policy, in order to decide whether the claim is within or without the policy coverage.

The more critical provisions of the policy read as follows:

"[Continental] agrees to pay indemnity for loss of life, limbs and sight, by the Insured Employee or a dependent covered hereunder, and resulting from injury sustained in the manner and to the extent herein provided.

" 'Injury' wherever used in this Policy means accidental bodily injury causing loss directly and independently of all other causes and sustained by the Insured Employee or a Dependent covered hereunder while this Policy is in force as to such person.

"PART III * * * If the body of an Insured Employee or a Dependent covered hereunder has not been found within one year after the time of disappearance or sinking of any conveyance in which such person was riding at the time of accident it will presume [sic] that injury resulted in loss of life within 180 days following the date of accident."

■ This Court has previously determined that the "disappearance" clause in Part III of the policy clearly and unambiguously provides coverage on the facts stipulated herein. (*See* Order of December 11, 1979). Griffith departed Dallas in a private plane, the plane disappeared, and his body was not found within one year after the disappearance. Indeed, even Defendant in its trial brief concedes "that the above stated facts invoke the 'disappearance' coverage provision of Paragraph 2 Part III." (*See* Defendant's Trial Brief at 2).

As Continental construes its own policy, the presumption of death following disappearance is sufficient to invoke coverage, without the proof of anything further. Under the disappearance clause, if the body of an insured is not found within one year after disappearance the policy presumes that "injury" resulted in loss of life. "Injury" is a defined term under the policy and means "accidental bodily injury." Thus the disappearance clause, by its own terms, presumes that accidental death has occurred if the insured is not found within a year after the disappearance of his aircraft.

Continental contends, however, that the disappearance clause must be read in conjunction with the other provisions of the policy, and that the coverage provided therein is necessarily limited and modified by the various exclusions contained in Part

IX of the policy. Specifically, Continental says that Exclusion (5) operates to vitiate the coverage afforded Plaintiff under the disappearance clause. Under Exclusion (5), the policy does not cover any loss caused by "riding in any aircraft, except to the extent permitted and specifically described in Part VIII 'Air Coverage'." The section entitled "Air Coverage" provides coverage in only two instances: if an insured is

[1] "riding as a passenger in any aircraft properly licensed to carry passengers;" or

[2] "operating or performing duties as a crew member of any aircraft owned, or operated by Delat [sic] . . . ."

In essence, Defendant suggests that any coverage afforded by the disappearance of the insured is ineffectual since the circumstances of the disappearance fall within the exclusion for aviation related injuries, which exclusion is negatively defined in the policy to embrace all injuries not covered in the Air Coverage provision of the policy. Thus, Defendant argues that Plaintiff, to recover, must show that Griffith's loss is also independently covered under the Air Coverage provision of the policy. Or, differently put, Defendant seems to be giving with one hand while taking away with the other by saying that Griffith's disappearance was covered unless it was excluded because not covered in a different portion of the policy. Prestidigitation of this sort deserves close attention.

■ At the outset, the Court agrees with Continental that an insurance contract must be read as a whole and that the disappearance clause of Part III must be read in conjunction with the exclusions contained in Part IX of the policy. *First National Bank of Midland v. Protective Life Ins. Co.*, 511 F.2d 731 (5th Cir. 1975).

■ The applicability of an exclusion in a particular case generally turns on proof of causation. By way of amendment to its Answer, Defendant Continental asserts that the loss claimed herein is without the policy coverage because it was caused by a situation that the policy expressly does not cover. Exclusion (5) disclaims coverage for any loss "caused by or resulting from . . .

(5) riding in any aircraft" (to the extent not protected under Air Coverage). In *Stroburg v. Insurance Company of North America*, 464 S.W.2d 827, 831–32 (Tex.1971), the Texas Supreme Court held that the phrase, "This policy does not cover loss *caused by or resulting from* . . ." (emphasis added), excludes liability for losses from the itemized risks only when such risks are proximate as distinguished from indirect or remote causes of a loss. The construction placed on that phrase by the Supreme Court is binding on this diversity court. Thus, for Defendant to prevail and for the exclusion to apply, riding in an aircraft in a fashion not covered in Part VIII of the policy must have been a *proximate* cause of the death of the insured. The Texas courts have held that "proximate cause" as applied in insurance cases has essentially the same meaning that it does when applied in negligence cases. *Federal Life Ins. Co. v. Raley*, 130 Tex. 408, 109 S.W.2d 972 (1937).

The parties stipulate that when last seen Griffith was riding in an aircraft. Little is known about the destination of the flight. There is no direct evidence that the plane went down, either on land or at sea. Neither is there any direct evidence of the cause of Griffith's death or disappearance, nor does the cause of his "injury" seem to be capable of proof.

■ Since the proximate cause of the insured's death or disappearance determines the applicability of a pleaded exclusion, and since there exists no evidence as to the cause of Griffith's death or disappearance, the placing of the burden of proof on one or the other of the parties will go a long way towards determining the outcome of this case. Under the *Erie* doctrine, the burden of proof is a "substantive" area of law and, hence, controlled by state rules of decision. *Dick v. New York Life Ins. Co.*, 359 U.S. 437 (1959), 79 S.Ct. 921, 3 L.Ed.2d 935; *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1942); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ It is well settled in Texas that where an insurance company pleads specific exclu-

sions set forth in the policy to raise an issue of contract coverage, the insured nonetheless bears the burden of proving that the loss was not attributable to the pleaded excluded hazard. *See, e. g., Sherman v. Provident American Ins. Co.,* 421 S.W.2d 652 (Tex.1967); *Hardware Dealers Mutual Ins. Co. v. Berglund,* 393 S.W.2d 309 (Tex. 1965); *Shaver v. National Title & Abstract Co.,* 361 S.W.2d 867 (Tex.1962); *T.I.M.E., Inc. v. Maryland Casualty Co.,* 300 S.W.2d 68 (Tex.1957); *see, also,* Tex.R.Civ.P. 94. The Court concedes that this is the view of a minority of jurisdictions and notes that the greater weight of American decisional authority requires that the insurer both plead and prove facts bringing the case within the exception to the liability of the policy. *Sherman, supra,* at 656 (Norvell, J. dissenting). Harsh as the application of the Texas rule may seem in this case, it is not for this Court sitting in diversity to overrule or otherwise abrogate such a settled principle of local law. *See Berglund, supra,* at 315–16. Consequently, since Continental amended its answer to set forth the affirmative defense of the aviation exclusion, Plaintiff has the burden of producing evidence to negative its applicability in this case.

Plaintiff has tried to carry this burden by advancing two distinct theories. First, the beneficiary argues that Griffith's disappearance and death was not proximately caused by an aviation accident. Alternatively, he argues that, even if Griffith met with an aviation accident, the accident was covered under the provisions of Part VIII of the policy, and therefore, not excluded by Part IX.

As to the first theory, Plaintiff contends that proof that the insured took off in a plane does not constitute proof that death directly resulted from riding in an aircraft, without some additional proof that the plane was experiencing some sort of difficulty. Plaintiff cites several cases where courts have refused to give effect to an aviation exclusion because the proof at trial failed to demonstrate that the insured's injuries were the result of a forced landing as opposed to some independent peril encountered after the termination of the flight.

*McDaniel v. Standard Accident Ins. Co.,* 221 F.2d 171 (7th Cir. 1955); *Security Mutual Life Ins. Co. v. Hollingsworth,* 459 P.2d 592 (Okla.1969); *see, also, Bull v. Sun Life Assur. Co.,* 141 F.2d 456 (7th Cir. 1944); *Chambers v. Kansas City Life Ins. Co.,* 156 Cal.App.2d 265, 319 P.2d 387 (1957); *Eschweiler v. General Accident Fire & Life Assur. Co.,* 241 F.2d 101 (7th Cir. 1957). In each of these cases an insured survived a plane crash unscathed, only to perish from drowning, exposure to the elements, or cardiac arrest. Plaintiff argues by analogy from these cases that there is insufficient proof of causation to justify the application of the exclusion. Plaintiff erroneously assumes that the burden of proving causation is on Continental. Each of the cases just cited comes from a jurisdiction where the majority rule that places the burden of pleading and proving exclusions on insurers is observed. Thus, the insufficiency of proof of causation works to the detriment and not benefit of Plaintiff's case.

Moreover, in the handful of cases where other courts have construed aviation exclusions in light of the complete disappearance of aircraft and crew, it has been held reasonable to infer from the circumstances that death resulted from riding in an airplane. In *Barringer v. Prudential Ins. Co.,* 62 F.Supp. 286 (E.D.Pa.1945), *aff'd,* 153 F.2d 224 (3d Cir. 1946), the insured's plane took off from Puerto Rico bound for Trinidad and neither the plane nor its occupants were seen or heard from thereafter. The case was tried to the court on the basis of the pleadings and stipulated facts, and the evidence, such as it was, was deemed sufficient to support a finding that the insured died and that death resulted from riding in a plane. The court concluded that the death was accidental and that the accident consisted in the plane's falling into the ocean:

"That, it seems to me is not only a reasonable inference, but the only reasonable one. ... 'This is a situation where ... the same evidence not only supports the inference of death, but also points to the cause of it.' Various more or less fantastic explanations of disappearance of plane

and passengers might be suggested but, with practically no land on the direct route to Trinidad, I do not see how there could be much doubt in the mind of any reasonable person that it came down in the sea. At any rate it is not necessary to preclude all other possibilities.

"If the plane fell into the sea then, again, the reasonable, probable and almost.necessary conclusion, from the nature of the accident, is that the insured's death resulted from riding in an airplane. Again, there are possible theories which might account for his death otherwise as, for example, gunfire from a German submarine, but they are remote."

One Texas civil appeals court reached the same inferential conclusion in an airplane disappearance case. In *Lincoln Liberty Life Ins. Co. v. Goodman*, 535 S.W.2d 7 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.), a plane with three occupants aboard took off after refueling in Springfield, Illinois, and no further radio contact was had with the aircraft. Eight days later the body of one of the men washed ashore from Lake Michigan. No trace of the others or their aircraft was found. In a suit brought on a policy owned by one of the missing passengers, the plaintiff contended that the insured's death was not within the exclusion if he escaped from the aircraft into the lake before his death or if he died as a result of drowning rather than injuries received on impact. The court concluded that plaintiff failed as a matter of law to sustain her burden of proving that the insured did not die as a result of activities excluded in the policy, and that no evidence existed that could support a finding that the insured reached a position of potential safety after the plane contacted the water and before his death, or that his death did not occur as a result of operating, riding in or descending from the aircraft. *Id.* at 11.

■ In light of these authorities, and on the basis of the evidence before this Court, it would not be unreasonable to conclude that Griffith died while riding in an aircraft. In flying from Dallas to Florida it is more than likely that Griffith's flight plan took him over the Gulf of Mexico. Other explanations for his disappearance would be wholly speculative and unsupported in the record. The Court finds that Plaintiff has failed to carry his burden of demonstrating that the insured's death was not caused by riding in an aircraft.

In his alternative theory, Plaintiff contends that if Griffith did indeed die while riding in an aircraft, his death was covered under Part VIII, the "Air Coverage" provision. Under this provision, the insured was covered while "riding as a passenger in any aircraft properly licensed to carry passengers and while Insured Employee is operating or performing duties as a crew member of any aircraft owned, leased or operated by [Delta] . . . ." Plaintiff asserts that the coverage afforded in the first instance in this provision encompasses Griffith's death; to this end he espouses an interpretation of the phrase, "riding as a passenger" which includes a pilot within its scope.

It would be an understatement to say that the question whether a "pilot" may also be a "passenger" within the meaning of an insurance policy is not a question of first impression in Texas. While it has sparked heated debate over the last three decades, the question appears now to be well settled. Plaintiff alleges that the word "passenger" as used in Part VIII is ambiguous and, therefore, within the rule of *Continental Casualty Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762 (1953). *Warren* employed the special rule of construction in insurance cases that where it is shown that an insurance policy is ambiguous, the ambiguous terms, exceptions and words of limitation will be strictly construed against the insurer. The Texas court conceded that general usage is the proper criterion for ascertaining the import of words in an insurance policy, and that the phrase "riding as a passenger in" suggested the meaning of "passenger" as a non-operative of the plane. But the *Warren* court found other language in the policy that affected the intended coverage and seemed both to include and exclude the pilot at the same time, thereby creating an ambiguity to be construed against the insurer.

No such ambiguity exists in this case. To be sure, the word "passenger" does not perforce exclude the pilot; the insurer might have made clear beyond doubt its intention to exclude him by the insertion of a phrase such as "and not as a pilot." But the additional language that created the ambiguity in *Warren* is not present here, and the Court cannot assume the ambiguity so as to place the case within the strict construction rule of *Warren* without committing error. *Paul Revere Life Ins. Co. v. First National Bank in Dallas,* 359 F.2d 641, 643 (5th Cir. 1966) (en banc). The Court finds that the coverage provided under Part VIII of the instant policy exists in two instances: (1) when riding as a passenger; and (2) when operating a Delta plane or performing crew member duties for Delta. The distinction between riding and operating is preserved in the grammar of the phrase and the clear interpretation is that pilots belong only to the class of operators. It is undisputed that the plane Griffith was operating was not owned or leased by Delta; he is covered only if "passenger" also includes pilot.

Since the Court finds no additional language in the insurance contract that has a logical bearing on the scope of the intended air coverage, it is bound by the holding of the en banc *Paul Revere* court:

> "[W]e cannot say that the word "passenger" on its face includes the pilot or operator of a plane. The term is not inherently ambiguous when used in its common or popular meaning .... We hold that the common or popular meaning of 'passenger' does not include the pilot."

359 F.2d at 644. The Court notes that *Paul Revere* has been followed by the lower Texas courts in subsequent cases and it can be assumed that it represents an accurate statement of Texas law. *See, e. g., Gideon v. Service Life & Casualty Co.,* 510 S.W.2d 631 (Tex.Civ.App.—Corpus Christi 1974, no writ).

The facts clearly indicate and the Court finds that Lee R. Griffith was piloting his plane when it left the Dallas airport. Consequently, the Court concludes that he was not riding as a passenger at the time of his disappearance, and that his disappear-

ance was not covered within the "Air Coverage" provision of the policy. It follows that Exclusion (5) in Part IX applies and that Plaintiff is not entitled to recover on the policy. Judgment for Defendant will be entered in accordance with this opinion.

SO ORDERED.