**PIONEER CHLOR ALKALI COMPANY, INC., Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Defendant.**

**No. CV–S–93–276–RLH.**

United States District Court, D. Nevada.

June 24, 1994.

J. Randall Jones and William Kemp of Harrison, Kemp & Jones, and Kevin R. Stolworthy of Jones, Jones, Close & Brown, Las Vegas, NV, for plaintiff.

Philip Silverberg of Mound, Cotton & Wollan, New York City, and Thomas D. Beatty, Las Vegas, NV, for defendant.

### *ORDER*

HUNT, United States Magistrate Judge.

(Motion for Summary Judgment—# 67; Countermotion for Summary Judgment—# 114)

This matter comes before the court on motions for summary judgment filed by both parties:

1. **Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment (# 67, filed February 4, 1994);**

2. **Plaintiff's Countermotion for Partial Summary Judgment on Issue of Liability (# 114, filed March 25, 1994).**[1]

Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") filed one pleading (# 122) which was both a reply in support of its

---

**1.** Pioneer combined its opposition to Defendant's Motion and its own countermotion in this one pleading.

motion and an opposition to Pioneer's countermotion. Plaintiff Pioneer Chlor Alkali Company, Inc., ("Pioneer") then filed a reply (# 130) in support of its Countermotion.

## INTRODUCTION

This action arises out of the May 6, 1991 chlorine gas leak which occurred at Pioneer's plant in Henderson, Nevada. Pioneer has sued National Union for breach of contract under an "all risk" insurance policy (the "Policy") which was in effect at the time of the gas leak. Pioneer seeks coverage for damage to its equipment, loss of the chlorine gas, and business interruption losses.

Pioneer manufacturers and sells liquid chlorine as well as some other chemicals. At Pioneer's plant, chlorine gas travels through 780 small steel tubes. These tubes pass through a secondary liquefier. Brine is forced into the liquefier by hitting an impingement plate which disperses the brine around the 780 tubes. The brine is at temperature of $-10°F$ and cools the chlorine gas into its liquid state. The liquid chlorine then continues downline and empties into storage tanks.

The following are the relevant portions of the insurance Policy for purposes of these summary judgment motions.

> This Policy covers property insured hereunder against all risks of direct physical loss or damage occurring during the period of this Policy from an external cause, except as hereinafter excluded.

(Ex. 1, Countermot. Summ.J., at 2.)

In the *Perils Excluded* section, the Policy states,

> This Policy does not insure against loss, damage or expense caused by or resulting from:

(*Id.* at 6.)

Among the paragraphs of exclusions is the following:

> Gradual deterioration, depletion, inherent vice, latent defect, termites, moth, vermin, ordinary wear and tear, dampness or dryness of atmosphere, extremes or changes of temperature, smog, shrinkage, evaporation, loss of weight, rust, *corrosion,* erosion, wet or dry rot, change in flavor or color or texture or finish; *unless such loss is caused directly by physical damage not otherwise excluded in this Policy to the property covered.*

(*Id.* at 6.) (emphasis added).

National Union has moved for summary judgment arguing that Pioneer's loss was not covered because it was caused by corrosion.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir. 1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

As both parties have moved for summary judgment, who bears which burdens discussed above depends on which summary judgment motion is being addressed.

## I. NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT (# 67)

For purposes of bringing their Motion for Summary Judgment, National Union has as-

sumed Pioneer's version of the chain of events leading to the gas leak. The facts according to Pioneer are as follows.

## A. *Facts*

At some point (perhaps twenty five years ago when the plant was built, perhaps less), a rag became lodged in the secondary liquefier. The rag, located near the impingement plate, diverted the flow of the brine. Due to such diversion, brine concentrated on a few of the steel tubes. This concentration of brine resulted in four small holes in three of the 780 steel tubes. Brine then entered the three tubes through these holes. The brine and the chlorine mixed to form a highly corrosive acidic solution.

This acidic solution caused damage to some equipment downline from the liquefier. Additionally, within a matter of days of the tubes being perforated, this brine-chlorine solution ate through an elbow in the piping downline from the liquefier. Through this breached elbow, forty-two tons of chlorine gas escaped into the atmosphere.

According to Pioneer, a diagram of the facts would look like the following: presence of rag → diversion of brine flow → corrosion and penetration of chlorine tubes → formation of hypochlorous/hydrochloric acid in chlorine tubes → damage to downline equipment and elbow joint → release of chlorine gas. (Pl.'s Reply at 14.)

Assuming these facts, National Union argues that it is entitled to judgment because the loss was caused by corrosion, a peril excluded from coverage.

The Court will first deal with a secondary argument by National Union concerning collateral estoppel.

## B. *Collateral Estoppel*

National Union argues that Pioneer should be collaterally estopped from arguing that this loss was not caused by corrosion. The previous litigation which National Union points to as grounds for estoppel is *Pioneer Chlor Alkali Co. Inc. v. Royal Indem. Co.*, No. 91–041446 (Dist.Ct., Harris County, Tex. 1993), *rev'd*, 879 S.W.2d 920 (Tex.Ct.App. 1994) (appellate court rendering judgment in Pioneer's favor). This Texas state case also arose out of the chlorine leak which is the subject of this action.

■ When a federal court sits in diversity jurisdiction, collateral estoppel is controlled by the forum state's substantive law. *Priest v. American Smelting & Refining Co.*, 409 F.2d 1229, 1231 (9th Cir.1969); *see also Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 926 (9th Cir. 1988) (applying collateral estoppel law of forum state) (citations omitted). Under Nevada law, collateral estoppel "prohibit[s] parties or their privies from re-litigating issues actually litigated and necessarily determined" in previous litigation. *Nevada v. Kallio*, 92 Nev. 665, 557 P.2d 705, 707 (1976) (citing *Clark v. Clark*, 80 Nev. 52, 389 P.2d 69 (1964)).

■ The present issue, whether this loss was caused by corrosion, was not actually litigated nor necessarily decided in the Texas proceedings. The defendant Royal Indemnity Co. had issued a boiler & machinery policy to Pioneer covering "accidents." The Royal policy expressly stated that certain items do not constitute an accident, among these, corrosion. The issue before the Texas court was whether the loss occurred from an accident. The cause of the accident, whether corrosion, the rag, or something else, was immaterial. Since the present issue was not decided at all, let alone necessarily decided by the Texas courts, collateral estoppel is not applicable.[2]

---

2. During summary judgment proceedings and the appellate proceedings in Texas, Pioneer had argued that an accident caused by corrosion was still an accident. It is these statements by Pioneer that National Union points to as grounds for estoppel or a party admission. The relevant doctrine is judicial estoppel which bars a party from taking inconsistent positions in the same or connected litigation. *Yanez v. United States*, 989

F.2d 323 (9th Cir.1993); *Stevens Technical Services, Inc. v. SS Brooklyn*, 885 F.2d 584 (9th Cir.1989). However, "superficial inconsistency must not be allowed to obscure an underlying consistency." Charles A. Wright et al., *Federal Practice and Procedure* § 4477 at 783–84 (1982). Because the issue in Texas was whether the loss occurred from an accident, there is no true inconsistency in positions by Pioneer. Pioneer was

## C. *The Cause of Pioneer's Loss*

■ A majority of jurisdictions use the efficient proximate cause doctrine in adjudicating all risk insurance policies where a covered and a noncovered peril contribute to a loss. *Villella v. Public Employees Mut. Ins. Co.*, 106 Wash.2d 806, 725 P.2d 957, 962 (1986) (en banc) (citations omitted); *see generally* 5 John A. Appleman, *Insurance Law and Practice* § 3083 (1970); 18 George J. Couch, *Cyclopedia of Insurance Law* §§ 74:696–717 (2d ed. rev. 1983).[3] This doctrine developed in California. *Schroeder v. State Farm Fire and Casualty Co.*, 770 F.Supp. 558, 560 (D.Nev.1991). If a covered peril is found to be the efficient proximate cause, then the loss is covered; if a noncovered peril is found to be the efficient proximate cause, then the loss is not covered. *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 295, 770 P.2d 704, 707 (1989) (in bank). The proximate cause is to be distinguished from a remote cause. *See id.*

The efficient proximate cause is "the one that sets others in motion." *Garvey*, 257 Cal.Rptr. 292, 295, 770 P.2d 704, 707; *Graham v. Public Employees Mut. Ins. Co.*, 98 Wash.2d 533, 656 P.2d 1077, 1081 (1983) (en banc) (efficient proximate cause "sets into motion a chain of events producing the loss"). The efficient proximate cause is not necessarily the last act in a chain of events. *Garvey*, 257 Cal.Rptr. at 296, 770 P.2d at 708. And while the efficient proximate cause is said to "set into motion a chain of events," it is not necessarily the "triggering cause" (assuming one could be identified). *Id.* Rather the efficient proximate cause is the "predominating cause." *Id.; Graham*, 656 P.2d at 1081.

The efficient proximate cause doctrine does not focus on a temporal place in the chain of events. For the last link (most immediate to the loss) may itself have been a natural or inevitable effect of the predominant cause, and therefore not the efficient proximate cause. *See Garvey*, 257 Cal.Rptr. at 295, 770 P.2d at 707. Similarly, an earlier cause is not the efficient proximate cause if it was merely an "antecedent circumstance" which "set the stage for the loss" or "made possible the subsequent loss." 18 Couch, *supra*, § 74:717; *Home Ins. Co. v. American Ins. Co.*, 147 A.D.2d 353, 537 N.Y.S.2d 516 (1989). The efficient proximate cause doctrine rather looks to the quality of the links in the chain to determine which is the predominant cause. As perhaps can already be derived from the language quoted above, application of this doctrine does not always result in one indisputable conclusion.

Nevada has not explicitly adopted the majority rule of efficient proximate cause. Generally where a state's highest court has not addressed an issue, a federal court having diversity jurisdiction involving such issue must predict how the state's highest court would decide the issue. *Schroeder*, 770 F.Supp. 558; *Abbott v. United Venture Capital, Inc.*, 718 F.Supp. 828, 832 (D.Nev.1989).[4] Relevant factors in determining what a

---

simply addressing Royal's argument head-on by arguing that the loss was still an accident even if it was an accident caused by corrosion. At other points in the pleadings Pioneer explicitly stated that the cause of the accident, whether corrosion, the rag, or something else, did not affect whether the loss was an accident. In *Yanez*, 989 F.2d 323, the plaintiff was not barred from claiming different causes of an accident in separate litigation against different tortfeasors because the acts of each tortfeasor could have contributed to the plaintiff's loss. Here, if Pioneer's loss were an accident (Royal case) which was caused by a covered peril (National Union case), then Pioneer would be entitled to recover under both policies. Thus, there is no real inconsistency, nor does it appear that Pioneer has been "playing 'fast and loose' with the court." *Yanez*, 989 F.2d at 326.

**3.** The applicable sections of the insurance treatises by Couch and Appleman are cited frequently by courts dealing with causation of loss issues.

**4.** *Schroeder* involved the efficient proximate cause doctrine. However, the court there did not hold whether it was adopting the doctrine or whether it believed that Nevada would adopt the doctrine. The court stated that applying the doctrine did not change a result it had already reached. It is also worth noting that in *Schroeder's* dicta concerning efficient proximate cause, it cited no authority when providing a definition of efficient proximate cause. *Schroeder's* unsupported explanation of efficient proximate cause as looking to the "first" cause is not accurate in light of the many cases reviewed by this Court. The predominant cause is the efficient proximate cause.

state's highest court would do include decisions from other jurisdictions, treatises, and restatements. *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir.1990).

This Court need not labor long over whether Nevada would adopt the efficient proximate cause doctrine. For if this Court rejected the efficient proximate cause doctrine, it would apply ordinary proximate cause, and ordinary proximate cause differs little, if at all, from efficient proximate cause.[5]

Generally for an insured to recover, an insured peril must be the proximate cause of the loss. *Standard Oil Co. of New Jersey v. United States,* 340 U.S. 54, 57–58, 71 S.Ct. 135, 137, 95 L.Ed. 68 (1950); *Midwest Specialties, Inc. v. Westfield Ins. Co.,* No. 14027, 1994 WL 107192, at *9 (Ohio Ct.App. March 30, 1994); 18 Couch, *supra,* § 74:696.

"A cause is proximate when it sets in motion a chain of events which results in the loss without interruption of any new or independent source." 18 Couch, *supra,* § 74:709. A cause which is remote is not proximate. *Id.* § 74:706. Thus, proximate cause is similar, if not the same, as efficient proximate cause.

As further evidence that proximate cause and efficient proximate cause are not different, courts do not seem to distinguish the two doctrines. In discussing efficient proximate cause, courts use a variety of terms including "efficient cause," "moving cause," "proximate cause," and combinations of these adjectives. *See Garvey,* 257 Cal.Rptr. at 295, 770 P.2d at 708; *see also Graham,* 656 P.2d at 1081 (court uses the terms "efficient," "predominant," and "proximate"); *accord Home Ins. Co.,* 537 N.Y.S.2d at 517; *Midwest Specialties, Inc.,* 1994 WL 107192, at *9; *Ovbey v. Continental Ins. Co.,* 613 F.Supp. 726, 727 (N.D.Ga.1985) ("question is whether the proximate, dominant, and efficient cause of

the loss in an excluded risk"), *aff'd,* 782 F.2d 178 (11th Cir.1986); *see also Standard Oil Co.,* 340 U.S. at 58, 71 S.Ct. at 137 (in explaining proximate cause, Court uses the phrase "efficient cause"); 18 Couch, *supra,* § 74:711.

Regardless of the name of the doctrine or number of adjectives within it, the law requires a decision as to what event will be held accountable as *the cause* of the loss. The legal cause of a loss is contrasted with a "cause" which is merely an antecedent, contributing circumstance. The legal cause of a loss is also contrasted with a cause which is an inevitable, intermediate cause within the natural chain of events set into motion by the true cause. Given the weight of authority, the similarity if not identicalness of efficient proximate cause to proximate cause, and no indication to the contrary from Nevada case law, the Court finds that the predominating cause of the loss is the appropriate standard.[6]

■ Based on the foregoing, if the efficient proximate cause of the loss was corrosion, or if the rag is a remote cause, then National Union is entitled to summary judgment.

Neither of these propositions have been established as a matter of law. Like proximate cause in general (tort or insurance), the determination of what was the efficient proximate cause is a question for the trier of fact. *State Farm Fire & Casualty Co. v. Von Der Lieth,* 54 Cal.3d 1123, 2 Cal.Rptr.2d 183, 820 P.2d 285 (1991) (in bank); *Garvey,* 257 Cal. Rptr. at 302, 770 P.2d at 714; *compare Allstate Ins. Co. v. Smith,* 929 F.2d 447, 451 (9th Cir.1991) (where facts on appeal are settled and not in dispute, proximate causation becomes a question of law); *see also Graham,* 656 P.2d at 1081 (efficient proximate cause is generally a question for the jury, but can be

---

**5.** Proximate cause in the insurance context is essentially the same as proximate cause in the negligence context, *Griffith v. Continental Casualty Co.,* 506 F.Supp. 1332, 1334 (N.D.Tx.1981), except foreseeability is not an element, *Travelers Indemnity Co. v. Jarrett,* 369 S.W.2d 653, 655 (Tx.Civ.App.1963) (citations within both cases omitted).

**6.** Although perhaps containing an unnecessary adjective, and not at all making the doctrine more clear, the Court will use the majority term "efficient proximate cause." To invent a new term would only add to the confusion in this legal nebula where case precedents filled with the legal jargon of efficient proximate cause offer little guidance in the doctrine's application and result.

a question of law where facts and inferences drawn are not in dispute).[7]

The many cases reviewed do not support the position that the last immediate event (here corrosion) is the efficient proximate cause as a matter of law. *See e.g., Smith,* 929 F.2d 447 (in an all risk policy excluding losses caused by rain, proximate cause was roofer's negligence in failing to cover uncompleted roof allowing rain to enter building and cause damage).[8] Neither has National Union demonstrated that the rag is remote as a matter of law. *See, e.g., Von Der Lieth* (jury could find that third party negligence occurring years prior to loss was the efficient proximate cause).

The Court wishes to stress that the problem here is not over the term "corrosion." The parties argue extensively over whether the perforations in the three tubes and the hole downline at the elbow are corrosion. As will be explained in the section concerning Pioneer's Countermotion *infra,* the Court feels confident that corrosion was involved in the loss. However, involvement is not enough. Case law does not establish that the insurer prevails if an excluded peril (here corrosion) is involved anywhere in the chain of causation or if an excluded peril is the last link in the chain of causation. Therefore, establishing that the perforations and the hole at the elbow were corrosion does not entitle National Union to summary judgment.

For purposes of National Union's Motion, the Court must assume that the rag was also involved in the loss, i.e., the rag diverted the brine flow causing the perforations. Pioneer's case turns not on the term "corrosion," but on the terms "caused by or resulting from." A jury could find that the efficient proximate cause of Pioneer's loss was corrosion. However, it is also possible that a jury could find that the rag was the efficient proximate cause. Because a jury could find either way, the Court must deny National Union's Motion for Summary Judgment.[9]

## D. Opting Out of the Efficient Proximate Cause Doctrine

National Union argues that even if efficient proximate cause is otherwise the appropriate legal standard, the language of the contract forecloses use of that doctrine.

■ The efficient proximate cause doctrine is a default rule which gives way to the language of the contract. *See Schroeder v. State Farm Fire and Casualty Co.,* 770 F.Supp. 558, 560 (D.Nev.1991); *Kane v. Royal Ins. Co. of America,* 768 P.2d 678, 685–86 (Colo.1989) (en banc); *but see Safeco Ins. Co. of America v. Hirschmann,* 112 Wash.2d 621, 773 P.2d 413 (1989) (en banc) (parties cannot contract around the efficient proximate cause doctrine). In *Kane,* the exclusion clause did not cover losses "caused by, resulting from, contributed to, or aggravated by any of" the excluded perils. *Kane,* 768 P.2d at 680. Other language indicating an intent to opt out of the efficient proximate cause doctrine is as follows:

> We do not insure for such loss [from an excluded peril] regardless of: (a) the cause of the excluded event; or (b) other causes

---

7. In the negligence context, Nevada has stated that "proximate cause is almost always an issue of fact rather than one of law." *Price v. Sinnott,* 85 Nev. 600, 460 P.2d 837 (1969), *aff'd sub nom. Price v. First National Bank of Nevada,* 90 Nev. 5, 517 P.2d 1006 (1974); *see also Frances v. Plaza Pacific Equities Inc.,* 109 Nev. 91, 847 P.2d 722, 724 (1993). As noted earlier, proximate cause in the insurance context is essentially the same as that in the negligence context. *See supra* note 5.

8. Incidentally, this author feels the *Smith* case to be incorrect in so far as the court found the failure to cover the roof to be the efficient proximate cause. I do not see how failing to cover a roof sets into motion a chain of events whose natural result is rain damage. Unlike a chain of causation where a cause brings about an effect (which in turn is a cause that brings about another effect), failing to cover a roof does not cause rain to occur. Rather than the efficient proximate cause, failing to cover the roof seems much more like an antecedent circumstance which set the stage to make the loss possible.

9. The efficient proximate cause doctrine could also affect the applicability of the Policy's exception to the corrosion exclusion. For a jury could find that even if corrosion was the cause of the loss, the corrosion was "caused directly by physical damage not otherwise excluded," i.e., the four perforations in the chlorine tubes were physical damage caused by the rag and resulted in corrosion and the loss. *See supra* p. 1228 (Policy's corrosion exclusion).

of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

*Schroeder,* 770 F.Supp. at 560. Such language precludes use of the efficient proximate cause analysis. *Id.* at 561; *Kane,* 768 P.2d at 685–86.

■ National Union argues that the parties opted out of the efficient proximate cause analysis because the Policy contains the words "resulting from."

"Resulting from" actually confirms use of the efficient proximate cause doctrine. A "loss caused by or resulting from" means a risk which is proximate as distinguished from remote. *Griffith v. Continental Casualty Co.,* 506 F.Supp. 1332 (N.D.Tex.1981); *accord Ovbey v. Continental Ins. Co.,* 613 F.Supp. 726 (N.D.Ga.1985); *Home Ins. Co. v. American Ins. Co.,* 147 A.D.2d 353, 537 N.Y.S.2d 516 (1989); *but see Pan American World Air., Inc. v. Aetna Casualty & Surety Co.,* 505 F.2d 989 (2nd Cir.1974) ("resulting from" limited inquiry into cause of loss to facts immediately surrounding the loss which was an airplane destroyed by hijackers; however, court did not discuss efficient proximate cause, i.e., did not hold that "resulting from" opted out of efficient proximate cause). Therefore, the language of the Policy indicates use of the efficient proximate cause doctrine rather than avoidance of the doctrine.

Additionally, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and popular sense. *Siggelkow v. Phoenix Ins. Co.,* 109 Nev. 42, 846 P.2d 303, 304 (1993). Reading the Policy's terms with a plain and ordinary meaning, I cannot equate the phrase "resulting from" with the phrases "contributed to" or "aggravated by." Additionally, when Appleman discusses qualifying words which can override the efficient proximate cause doctrine, he lists "aggravated by" and "contributed to", but does not list "resulting from." 5 Appleman, *supra,* § 3083. Neither can "resulting from" ordinarily be equated with language such as in *Schroeder,* e.g., not insuring for losses from excluded perils "regardless of the cause of the excluded event." *Schroeder,* 770 F.Supp. at 560.

Furthermore, to the extent "resulting from" could mean either efficient proximate cause or the cause nearest the loss, the court must construe this ambiguity in favor of Pioneer. For where a term in an insurance policy is "subject to more than one interpretation, doubts must be resolved in favor of the insured." *Keener v. California State Auto. Ass'n Inter–Ins. Bureau,* 107 Nev. 504, 814 P.2d 87, 88 (1991) (citations omitted); *see also Farmers Ins. Exchange v. Young,* 108 Nev. 328, 832 P.2d 376, 377 (1992) (ambiguity is resolved in favor of insured) (citation omitted). Resolving this ambiguity of "resulting from" means only that the Court finds that the parties have not contracted out of the efficient proximate cause doctrine.[10]

Thus, the parties have not contracted out of the efficient proximate cause doctrine. Under that doctrine, a jury must determine the efficient proximate cause of Pioneer's loss.

Accordingly, the Court must deny National Union's Motion for Summary Judgment.

## II. PIONEER'S COUNTERMOTION FOR SUMMARY JUDGMENT (# 114)

The discussion above regarding the efficient proximate cause being a question for the jury is sufficient to deny Pioneer's Countermotion for Summary Judgment. However, the Court has some other items to ad-

10. This is all that construing in favor of an insured means. Pioneer seems to think if there is an ambiguity anywhere in the Policy, Pioneer wins the case because the ambiguity is construed in favor of Pioneer. *Contra proferentem* is not so strong a weapon for the insured; indeed, the doctrine is not a weapon at all, but a method of construction. Since "resulting from" could ordinarily and reasonably refer to either the proximate cause or the cause most immediate to the loss, the court construes in favor of Pioneer and holds that "resulting from" refers to the proximate cause. As already stated, the efficient proximate cause doctrine is a question for the jury. So construing in favor of an insured does not mandate judgment for Pioneer. *Contra proferentem* merely precludes National Union from receiving judgment based on the argument that "resulting from" forecloses use of the efficient proximate cause doctrine and limits the inquiry to the cause immediate to the loss.

dress with respect to Pioneer's Countermotion.

### A. Pioneer Has Not Demonstrated the Absence of a Genuine Issue as to All Material Facts.

■ Pioneer believes that the Court should trace the chain of events back to the rag, assume the rag was in the liquefier due to negligence, and hold that negligence was the efficient proximate cause of Pioneer's loss. There is no evidence of negligence other than the rag itself. It seems as possible that the rag could have been in the liquefier due to maintenance, an excluded peril, or several other possibilities, e.g., vandalism, sabotage. Since maintenance is an excluded peril, it may not be enough to find that negligence caused the rag to be in the liquefier. The jury may need to know what kind of negligence was involved, i.e., if negligent maintenance was the cause, the Policy's maintenance exclusion would likely be applicable. Pioneer has not shown as a matter of law that a covered peril was the proximate cause of the loss.[11]

Moreover, Pioneer's version of the facts of the loss, i.e., the rag diverting the flow of brine causing holes, etc., was assumed by National Union only for purposes of National Union's summary judgment motion. That is, National Union was arguing that assuming the facts are as Pioneer states them to be, National Union is entitled to judgment under the Policy's corrosion exclusion. National Union has not assumed this version of facts for Pioneer's motion, and Pioneer has not established such version of the facts. Indeed, National Union has evidence that there was external corrosion at the elbow where the gas leaked, i.e., there was corrosion independent of that within the assumed chain of causation.

As another example, the Court does not feel that Pioneer has established indisputably that the rag accelerated a stream of brine onto the four spots where the perforations were formed and thus abraded the pipes.

The brine apparently hits an impingement plate and disperses around the chlorine pipes. The impingement plate is made of the same metal as the chlorine tubes. Although the impingement plate bears the full force and of the brine hitting it, the impingement plate was not worn through. The Court does not understand how a rag obstructing this diversion of brine (which has already lost energy from hitting the impingement plate) can accelerate the stream so as to abrade the pipes.

Additionally, a photograph of the liquefier showed that there were several portions of cloth (the rag) at different places touching different chlorine tubes. Why were the four perforations grouped near one of the portions of the rag and no perforations near another similarly sized portion of rag?

Pioneer has not established the absence of genuine issues of material fact.

### B. Pioneer is Not Entitled to Judgment as a Matter of Law.

In the discussion of National Union's Motion for Summary Judgment, the Court cited some cases where the last link in the chain of causation was held not to be the efficient proximate cause.[12] From those cases, it may have looked like Pioneer should be entitled to judgment. As already shown there are genuine issues of fact, and the efficient proximate cause is a question for the trier of fact. Additionally, there are cases supportive of National Union. E.g., Home Ins. Co. v. American Ins. Co., 147 A.D.2d 353, 537 N.Y.S.2d 516 (1989) (covered peril (steam and moisture) was a remote cause merely setting stage for loss caused by excluded cause (electrical arcing)); accord Morgan Guaranty Trust Co. of New York v. Aetna Casualty & Surety Co., 199 A.D.2d 72, 604 N.Y.S.2d 952 (1993); see Ovbey, 613 F.Supp. at 728 (underground water pressure (an excluded peril) was cause of wall collapsing, and causes of the excluded peril, e.g., improper soil compacting, merely set stage for loss) (citing Hanover Fire Ins. v. Newman's,

---

**11.** Indeed, National Union was not far off when it stated that Pioneer's Countermotion was simply a negative restatement of National Union's Motion than a true summary judgment.

**12.** See Smith, Von Der Lieth, supra p. 1232.

*Inc.,* 108 F.2d 561 (5th Cir.1939) (where cyclone damaged sprinkler resulting in water damage, cyclone was not cause of loss), *cert. denied,* 309 U.S. 680, 60 S.Ct. 718, 84 L.Ed. 1024 (1940)); *see also Pan American World Air., Inc.,* 505 F.2d at 1006 ("resulting from" limits inquiry to facts immediately surrounding the loss). In short, the Court has reviewed many cases, and some are more supportive of Pioneer while others are more supportive of National Union.

The cases do not establish that either party here is entitled to judgment as a matter of law.[13]

### C. *Corrosion Is Not an Ambiguous Term.*

■ Pioneer argues that the term corrosion is ambiguous; that ambiguities should be construed in favor of the insured; and that therefore Pioneer should recover under the Policy. This Court has already addressed the issue of construing ambiguities in favor of the insured. *See supra* note 10. In any event, the Court believes that "corrosion" is not an ambiguous term.

The terms of an insurance policy are to be read according to their "plain, ordinary, and popular sense," and ambiguities are to be construed in favor of the insured. *Keener v. California State Auto. Ass'n Inter–Ins. Bureau,* 107 Nev. 504, 814 P.2d 87, 88 (1991). However, "[p]olicy terms are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interest." *Alf v. State Farm Fire & Casualty Co.,* 850 P.2d 1272 (Utah 1993).

The Court feels that an ordinary person coming across the term "corrosion" would not find it to be ambiguous. Corrosion means "the action, process, or effect of corroding." *Webster's Third New International Dictionary* (unabridged 1986) at 512 (hereinafter "Webster's"). Corrode means "to eat away by degrees as if by gnawing ... wear away or diminish by gradually separating, or destroying small particles or converting into an easily disintegrated substance; *esp:* to eat away or diminish by acid or alkali reaction or by chemical alteration." *Id.* Webster's provides this sample sentence: "the caustic substance corroded the material so that it fell apart in the hands." *Id.*

The perforations and the hole downline at the elbow were due to the brine and brine-chlorine mixture eating away at the metal pipes. The pipes were eaten away or diminished "by acid or alkali reaction or by chemical alteration." Webster's at 512. The pipes and elbow were corroded.

Pioneer asserts that corrosion must be gradual in the sense that corrosion takes a "long time."[14] Gradual does not mean a long time (assuming "a long time" could be defined). Gradual means "proceeding by steps or degrees." *Id.* at 985. One of the definitions of "corrode" is "to eat away by *degrees*." *Id.* at 512 (emphasis added). These definitions contain no element of time. Something need not take a certain number of years to be gradual. If something is gradual, it proceeds step by step; it proceeds in regular increments. For example, a stretch of highway may have a gradual incline. There is nothing about "a long time" implicit in such a sentence.

The perforations in the chlorine tubes may have taken twenty or more years to form. This however is not gradual for Pioneer.[15]

---

**13.** Because this Court has found that a jury could decide corrosion or the rag (or something else) was the efficient proximate cause, it should go without saying that nothing in this Order expresses an opinion by the Court as to what was the efficient proximate cause of Pioneer's loss.

**14.** Thus, for Pioneer, it is redundant to say "the metal corroded slowly," and it is an oxymoron to say "the metal corroded quickly."

**15.** Pioneer discusses its expectations when buying the Policy and what it thought corrosion meant. However, only when an ambiguity exists, should a court go beyond the language of the policy and consider the parties' intent and expectations. *Farmers Ins. Exchange,* 832 P.2d at 379 (citations omitted). Similarly unavailing is Pioneer's argument concerning the "Benchmark Committee" which drafted the uniform all risk policy on which National Union's Policy is based. As the Court finds the term "corrosion" to be unambiguous, the Court will not endeavor in some form of legislative history (of which neither of the parties were likely aware) concerning the exclusional paragraph which lists corrosion.

At the hearing, the Court asked Pioneer if the perforations would be gradual and due to corrosion if they had taken 100 years to form. Pioneer maintained that the corrosion exclusion would still not be applicable. Since Pioneer believes that its pipes should have lasted 414 years, apparently any corrosion damage to the pipes short of such time is not gradual and is not corrosion within the meaning of the Policy.

Not every metal corrodes in every solution at the same rate of speed. One solution may corrode steel much more quickly than another solution 2. A chemist would not say that the chemical reaction involving the first solution was not corrosion because it occurred more quickly than the chemical reaction involving the second solution. This case provides the perfect example. Pioneer believes that brine alone would take 414 years to corrode its metal pipes. However, after the pipes had been breached, the brine-chlorine mixture (a more caustic and acidic solution) took only a few days to corrode the steel elbow. How fast corrosion occurs depends on the solution and the metal involved.

As would any reasonable person assessing the facts, Pioneer knows that corrosion was involved. Pioneer's pleadings in Texas and in the present case discuss the perforations and the elbow damage as corrosion. Pioneer's experts use the terms "corrosion" in discussing the damage to the pipes and use the phrase "highly corrosive solution" in referring to the brine-chlorine mixture. (Exs. D, C, Def.'s Mot.Sum. J.) Pioneer also used the term corrosion at the hearing on this summary judgment. Pioneer's real position is that this eating away of the pipes (corrosion to everyone else) is not "corrosion" as used in the Policy. Such a position is contrary to the rule that policy terms are read according to their ordinary meaning.

Pioneer also argues that it did not anticipate, nor could it have discovered and prevented, this loss. The terms of the Policy do not insure against "unexpected" losses. The Policy insures losses which are not excluded, and losses caused by or resulting from corrosion are excluded. The definition of corrosion contains nothing about expectations.

Just as with Pioneer's argument about ambiguities, this expectation argument leads to the conclusion that an insured should always win regardless of the facts or the policy. By arguing that Pioneer should win because it did not expect the loss, Pioneer implicitly argues that an insurer should win only when there is an expected loss. But would an insured ever suffer an expected loss? No, if the insured expected the loss, the insured would take steps to prevent the loss.

The chemical reaction which caused the perforations and the chemical reaction which caused the hole at the elbow were corrosion. Whether corrosion takes a matter of days, twenty-five years, or 100 years does not change the fact that it is corrosion. *See Arkwright-Boston Mfr. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 594 (7th Cir.1987). Whether corrosion is expected does not change the fact that it is corrosion. The Court finds that the term "corrosion" is not ambiguous. For the "[m]ere disagreement between the parties about the meaning of a term does not create ambiguity." *Kane*, 768 P.2d at 680 (the term "flood" does not include a distinction between artificial and natural floods) (citation omitted).

Pioneer has not demonstrated the absence of any genuine issue of material fact or that Pioneer is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the following motions are **DENIED:**

1. Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment (# 67);

2. Plaintiff's Countermotion for Partial Summary Judgment on Issue of Liability (# 114).