HAROLD SCOTT AND RUTH SCOTT, APPELLANTS, v. DEPARTMENT OF COMMERCE, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, THE ADMINISTRATOR OF FINANCIAL INSTITUTIONS OF THE STATE OF NEVADA, AS ITS AGENT AND OFFICER, AND THE STATE OF NEVADA, RESPONDENTS.

No. 17934

HAROLD SCOTT AND RUTH SCOTT, APPELLANTS, v. J. DEAN WILSON, E. F. MUELLER, LINDA TUCCIARONE, AND PATRICIA NASH, RESPONDENTS.

No. 18507

October 26, 1988                              763 P.2d 341

---

[1]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.

*LePome, Willick & Gorman,* Las Vegas, for Appellants.

*Brian McKay,* Attorney General, *J. Gregory Damm,* Deputy Attorney General, and *Despina M. Hatton,* Deputy Attorney General, Carson City, for Respondents Department of Commerce, Administrator of Financial Institutions, and State of Nevada.

*James J. Brown,* Las Vegas, for Respondents E. F. Mueller and J. Dean Wilson.

*Cohen, Lee & Johnson,* Las Vegas, for Respondent Linda Tucciarone.

*Carol Menninger,* Las Vegas, for Respondent Patricia Nash.

*Hale, Lane, Peek, Dennison & Howard* and *Victoria S. Mendoza,* Reno, and *Brobeck, Phleger & Harrison* and *Anthony M. Dominic De Toro, Christina Ramona* and *Luther Kent Orton,* San Francisco, for Amicus Curiae Leroy R. Bergstrom.

## OPINION

*Per Curiam:*

These are consolidated appeals by investors in Imperial Mortgage Corporation, a state-regulated mortgage company, from the district court's denial of claims against Imperial's principals and agents and against the State of Nevada. Pursuant to an order of this court, Leroy Bergstrom, the trustee in bankruptcy for J. Stephen Lemons and Associates, another Nevada mortgage company, filed briefs as *amicus curiae*. For the reasons stated below, we find no error in the district court's judgments and hereby affirm those judgments.

On March 3, 1986, the last possible day under the applicable statute of limitations, appellants Harold and Ruth Scott (the Scotts) filed a lawsuit in the form of a class action against principals and agents of Imperial Mortgage Corporation and against the State of Nevada. The Scotts alleged in their complaint that financial losses in their investments with Imperial Mortgage Corporation were due to fraud and intentional misrepresentations by principals and agents of Imperial Mortgage Corporation. They also sought to hold the State of Nevada liable for their losses, alleging that the losses were caused by the State's negligent regulation of Imperial Mortgage Corporation. After a hearing, the district court, on October 27, 1986, granted the State's motion to dismiss. The case proceeded below under a new docket number after dismissal of the State.

On June 9, 1987, the district court entered an order granting respondent Wilson's motion for summary judgment with respect to the class action, granting the remaining defendants' joinder in Wilson's motion, and denying the Scotts' motion to confirm class under NRCP 23. The Scotts moved to amend their complaint to add a cause of action for negligence. The motion was opposed, and on August 10, 1987, the district court entered an order denying the motion. We have consolidated the Scotts' separate appeals from the district court's order dismissing the State as a defendant and from its order granting summary judgment.

The Scotts first challenge the district court's dismissal of this action with respect to the State. They contend that NRS Chapter

645B, the statutory scheme regulating mortgage companies, imposes upon the State an affirmative duty to regulate and investigate mortgage companies so as to prevent losses to investors such as the Scotts, that the State did not do so, and that the State is thus liable for the Scotts' losses.

In particular, the Scotts contend that the commissioner[1] of financial institutions had a duty to inspect mortgage companies and to insure that mortgage companies operated only if they were eligible for licensing. Nevada statute provides that the commissioner "shall . . . [c]onduct such examinations and investigations as are necessary to ensure that mortgage companies meet the requirements of this chapter for obtaining a license . . . on a continuing basis." NRS 645B.060(2)(e). The grounds for refusing to license or for suspending the license of a mortgage company include fraud, misrepresentation and poor financial condition. *See* NRS 645B.100. The Scotts contend that under these provisions, once the State was informed that Imperial was falsely and fraudulently representing itself as solvent, the State had a duty to investigate and to insure that Imperial operated only if it was eligible for licensing. The Scotts further contend that the legislature's use of the word "shall" in NRS 645B.060(2) indicates that conducting appropriate investigations and ensuring that mortgage companies meet licensing requirements at all times is a mandatory duty admitting no discretion. Therefore, the Scotts maintain, that duty is not subject to the discretionary function exception to the State of Nevada's waiver of sovereign immunity. *See* NRS 41.032(2). We disagree with these contentions.

Under NRS 41.032(2), the State of Nevada has retained its common law sovereign immunity in all matters which involve "a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." The provisions of NRS Chapter 645B clearly give the commissioner discretion in the application of his specialized knowledge and judgment to the regulation of mortgage companies.

Furthermore, the NRS 41.032(2) exception to waiver of sovereign immunity is practically identical to 28 U.S.C. § 2680(a), the discretionary function exception in the Federal Tort Claims Act. Therefore, federal precedents are relevant to our interpretation of NRS 41.032(2). *See* Hagbloom v. State Dir. of Motor Vehicles,

---

[1]The 1987 amendments to this chapter substituted "commissioner" [of financial institutions] for "administrator" [of financial institutions] throughout the chapter.

584

93 Nev. 599, 571 P.2d 1172 (1977); Harrigan v. City of Reno, 86 Nev. 678, 475 P.2d 94 (1970). Federal courts have consistently held that federal regulatory authorities are not subject to liability for claims based on allegations of ineffective or inadequate regulation of financial institutions.

For example, in Emch v. United States, 630 F.2d 523 (7th Cir. 1980), *cert. denied,* 450 U.S. 966 (1981), the court held that under the discretionary function exception to the Federal Tort Claims Act, federal bank regulation agencies are immune from the claims of a stockholder in a bank whose stock became worthless when the bank was declared insolvent. The court reasoned that claims against regulating agencies for failing to anticipate the bank's difficulties and for failing to insure the bank officers' honesty and competence were "of the type which [28 U.S.C.] section 2680(a) was designed to preclude. . . ." *Id.* at 528-29. In Huntington Towers, Ltd. v. Franklin Nat. Bank, 559 F.2d 863 (2d Cir. 1977), *cert. denied sub nom,* Huntington Towers, Ltd. v. Federal Reserve Bank of New York 434 U.S. 1012 (1978), the court held the government immune under the discretionary function exception from claims for a borrower's losses that occurred when the bank was declared insolvent. The court stated that "determining the point at which a bank is no longer able to meet its obligations as they fall due involves a substantial amount of discretion." *Id.* at 870. The court in Federal Deposit Ins. Corp. v. Jennings, 615 F.Supp. 465 (W.D.Okla. 1985), *aff'd,* 816 F.2d 1488 (10th Cir. 1987), dismissed claims against the government, holding that the decision to liquidate rather than revive a bank was discretionary. The court in Davis v. Federal Deposit Insurance Corporation, 369 F.Supp. 277 (D.Colo. 1974), dismissed depositors' claims based on the FDIC's failure to make public facts concerning the bank's condition. The court held that decisions to terminate a bank's insured status or to issue a cease and desist order were discretionary and that the FDIC had no duty to advise the public of the bank's condition.

State agencies regulating financial institutions have also been held immune from suit for claims similar to those of the instant case. In Nordbrock v. State, 395 N.W.2d 872 (Iowa 1986), the Iowa Supreme Court held that under that state's discretionary function exception to the waiver of sovereign immunity, Iowa bank regulators were immune from suits alleging negligence in the examination and supervision of banks.

In accord with these authorities, we conclude that the regulation of mortgage companies under NRS Chapter 645B constitutes

an exercise of the state agency's discretionary function. Therefore, pursuant to NRS 41.032, no action can be brought against the State based on allegations of negligent or ineffective inspection, supervision or regulation of mortgage companies. The legislature's use of the word "shall" in the statutory scheme indicates a mandatory requirement that the regulatory program be implemented, but the commissioner retains considerable discretion in the administration of the program. The discretionary function exception applies to the commissioner's and the regulatory authority's performance of their functions under the statute. Accordingly, the district court correctly dismissed the State of Nevada from this case.

In addition, we have previously held that when a governmental duty runs to the public, no private cause of action is created by a breach of such duty. *See* Whalen v. County of Clark, 96 Nev. 559, 613 P.2d 407 (1980); Bruttomesso v. Las Vegas Met. Police, 95 Nev. 151, 591 P.2d 254 (1979). This rule applies to the regulation of financial institutions. Federal bank regulators do not owe individual persons or institutions a duty under their power to examine and supervise banks. *See, e.g.,* First State Bank of Hudson County v. U.S., 599 F.2d 558 (3d Cir. 1979), *cert. denied,* 444 U.S. 1013 (1980); Harmsen v. Smith, 586 F.2d 156 (9th Cir. 1978); In re Franklin Nat. Bank Sec. Litigation, 478 F.Supp. 210 (E.D.N.Y. 1979). State regulatory agencies were held to have no duty to protect individual investors in Baerlein v. State, 595 P.2d 930, 931-32 (Wash. 1979), and purchasers of time share housing units in Hayes v. Nagata, 730 P.2d 914 (Haw. 1986). We agree with the following reasoning of the Kentucky Supreme Court, expressed in its opinion denying claims against the Kentucky Department of Banking and Securities for alleged failures to ascertain and report the condition of state-regulated savings associations:

> When the governmental entity is performing a self-imposed protective function as it was in the case at hand, the individual citizen has no right to demand recourse against it though he is injured by its failure to efficiently perform such function. Any ruling to the contrary would tend to constitute the Commonwealth an insurer of the quality of services its many agents perform and serve only to stifle government's attempts to provide needed services to the public which could not otherwise be effectively supplied.
>
> . . . We perceive that the public interest is better served by a government which can aggressively seek to identify and meet the current needs of the citizenry, uninhibited by the

> threat of financial loss should its good faith efforts provide less than optimal—or even desirable—results.

Com., Dept. of Banking & Securities v. Brown, 605 S.W.2d 497, 499 (Ky. 1980). No cause of action by mortgage company investors against the State of Nevada was created by the legislature's determination that the public interest is served by state regulation of mortgage companies or by operation of the regulatory program.

Second, the Scotts argue that the district court erred in denying their motion to amend their complaint to allege a cause of action for negligence rather than intentional fraud. The Scotts filed their complaint on the last possible day under the statutory limitations. They argue that, under NRCP 15(c),[2] the proposed amended complaint should relate back to the original complaint, even though their theory of liability had changed, because the proposed amended complaint alleged the same facts as the original complaint and the defendants had adequate notice of the fact situation underlying the Scotts' claims.

We have expressed the standard for NRCP 15(c) relation back as follows:

> If the original pleadings give fair notice of the fact situation from which the new claim for liability arises, the amendment should relate back for limitations purposes.
>
> On the other hand, where an amendment states a new cause of action that describes a new and entirely different source of damages, the amendment does not relate back, as the opposing party has not been put on notice concerning the facts in issue.

Nelson v. City of Las Vegas, 99 Nev. 548, 556, 665 P.2d 1141, 1146 (1983) (citations omitted). In *Nelson,* we upheld the district court's refusal to allow a plaintiff who had alleged intentional infliction of emotional distress to add a battery cause of action after the statute of limitations had run because the defendant had received no notice of the battery claim in the earlier pleadings. *Id.* at 557, 665 P.2d at 1146. The instant case presents a similar situation. A cause of action in negligence requires the pleading of different factual allegations and the preparation of a substantially different defense than an action alleging fraud and intentional misrepresentation. The Scotts' complaint provided respondents

---

[2]NRCP 15(c) provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

with no notice to defend against an action alleging negligence. We see no error in the district court's refusal to allow the Scotts, after the statute of limitations had run, to amend their complaint to allege a new cause of action in negligence.

In December of 1987, respondent Wilson filed a motion to dismiss this appeal as to him pursuant to NRAP 3 because he was not served with notice of the appeal. The Scotts opposed the motion but admitted failing to serve Wilson. This court deferred disposition of Wilson's motion. Under our decision in this case, respondent Wilson suffered no prejudice by the Scotts' failure to serve him with proper notice of this appeal. Accordingly, we deny Wilson's motion to dismiss under NRAP 3. For the reasons stated above, the district court's judgments are affirmed.