LINDA FRANCES, Individually, and LINDA FRANCES, as Guardian for DAVID E. FRANCES and JOSHUA W. FRANCES, Minor Children, Appellant/Cross-Respondent, *v.* PLAZA PACIFIC EQUITIES, INC., a California Corporation, Respondent/Cross-Appellant.

No. 22475

February 23, 1993                                     847 P.2d 722

[Rehearing denied July 8, 1993]

*C. Nicholas Pereos,* Reno, for Appellant/Cross-Respondent.

*Paul Hamilton,* Reno, for Respondent/Cross-Appellant.

# OPINION

*Per Curiam:*

Five-year-old Michael C. Frances suffered a cardiac arrest secondary to drowning and died on November 23, 1988. Linda Frances, individually and as guardian ad litem for her three minor children (at the time of the filing of the complaint, Michael was still alive), filed an action against respondent, Plaza Pacific Equities, Inc. ("Plaza") contending that the swimming pool owned by Plaza was in a dangerous condition with cloudy water and the lack of an antivortex drain cover. Linda complained that the condition of the pool was a substantial factor in causing Michael's drowning and the resultant injuries that she and her other two children sustained.

The jury returned a verdict for the defendant, finding that although Plaza was negligent, its negligence was not the proximate cause of Michael's death. For reasons discussed hereafter, we have concluded that reversible error infected the trial, thus warranting a new trial.

## FACTS

On August 29, 1988, three brothers, David, Joshua and Michael Frances, ages eight, six, and five, respectively, were playing in the swimming pool at the apartment complex where they lived. The brothers' mother, Linda Frances, and her friend, Catherine Thorness, agreed that Catherine would watch and supervise the brothers at the pool. Although many people were present in and around the pool, no one noticed Michael in distress or his still body at the bottom of the pool.

As Catherine was preparing to leave with the children, she saw Michael under the water, dove in, and carried him to the pool deck. Michael was unresponsive but was revived by CPR. After receiving emergency hospital care, Michael's condition gradually stabilized, although he remained comatose throughout his hospitalization. On November 23, 1988, Michael died.

Plaza owned and operated Sierra Woods Apartments, the residential complex where Michael drowned. The day before the incident, the apartment pool was closed because the chemical balance was improper and the water lacked clarity. Testimony at

trial revealed that the pool water was cloudy or murky on the day of the drowning. The record also reflects that on the day following Michael's tragic experience, the Washoe County District Health Department cited Plaza for numerous violations pertaining to the pool, including: (1) disrepair of stairs, walkways and self-closing gate; (2) abnormal disinfectant level; (3) lack of an antivortex grate; (4) dirty pool; and (5) lack of first aid kit.

Dr. Alison Osinski, an aquatics consultant, testified that the pool's lack of contour or vertical depth markings made the pool a safety hazard because nothing in the pool gave bathers a visual cue as to changes in the water depth. Moreover, Dr. Osinski stated that the Nevada Code requires water clarity of a quality that permits persons anywhere on the pool deck to see the main drain of the swimming pool.

Linda's complaint alleged that the cloudy water and the pool's lack of an antivortex drain cover were substantial causative factors in Michael's drowning and the injuries sustained by the surviving members of Michael's immediate family.

Prior to trial, the district court granted summary judgment to Plaza, dismissing Linda's claim for negligent infliction of emotional distress. The basis for the summary dismissal was the fact that Linda was not "present" at the scene of the accident. Thereafter, the district court also entered an order granting summary judgment to Plaza that dismissed David's and Joshua's claims for wrongful death.

The court ruled on the first day of trial that Linda (individually) could amend her complaint to allege a cause of action for wrongful death and for Michael's pain and suffering pursuant to NRS 41.085 and 41.085(4). Linda (as guardian ad litem) was also allowed to assert a cause of action on behalf of David and Joshua for their emotional distress. However, the court dismissed Linda's claim for Michael's medical expenses under the rationale that she had not secured the status of personal representative of Michael's estate pursuant to NRS 41.085(5) and NRCP 25(a).

Trial commenced on April 30, 1991. The instructions to the jury after the close of evidence included instructions on negligence, negligence per se for Plaza's violation of the Washoe County Health Code, the negligent infliction of emotional distress alleged on behalf of Joshua and David the wrongful death of Michael, and proximate cause. The jury found that although Plaza was negligent, its negligence was not "a proximate cause of injury" to Michael, Linda, David, or Joshua.

## PROXIMATE CAUSE

The jury received numerous instructions at the end of trial,

including instruction number 35 outlining proximate cause.[1] Proximate cause has been defined as "'any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.'" Taylor v. Silva, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980) (citing Mahan v. Hafen, 76 Nev. 220, 225, 351 P.2d 617, 620 (1960)). In Nevada, issues of negligence and proximate cause are usually factual issues to be determined by the trier of fact. Nehls v. Leonard, 97 Nev. 325, 630 P.2d 258 (1981); Price v. Sinnott, 85 Nev. 600, 460 P.2d 837 (1969). Moreover, a jury's verdict supported by substantial evidence will not be overturned *unless* the verdict is clearly erroneous when viewed in light of all the evidence presented. Bally's Employees' Credit Union v. Wallen, 105 Nev. 553, 555-56, 779 P.2d 956, 957 (1989). For the reasons expressed below, we hold as a matter of law that the condition of the pool was *a proximate cause* of the child's drowning.

The jury was presented with substantial evidence of the deleterious condition of the pool as it existed at the time of Michael's drowning. Dr. Osinski testified at length of the negligent manner in which the pool was operated and maintained. Kelly Donathan, one of the children who was swimming at the time of the incident, testified that something brushed up against her leg as she swam under the surface of the water, but because of the condition of the water in the pool, she could not see what it was.

As previously noted, the jury was given an instruction defining proximate cause. However, the jurors exhibited confusion over the concept and reached a verdict which manifestly ignored or misapplied the jury instruction.

This court has long adhered to the rule that where there is a conflict in the evidence, the verdict or decision will not be disturbed on appeal. Avery v. Gilliam, 97 Nev. 181, 625 P.2d 1166 (1981). However, we have recognized an exception where "there is plain error in the record or . . . a showing of manifest injustice." *Price,* 85 Nev. 600, 607, 460 P.2d 837, 841 (1969); *see* DeFonce Const. Co. v. City of Miami, 256 F.2d 425 (5th Cir. 1958). This case readily evokes the exception because of the jury's obvious disregard of the proximate cause instruction with its resulting injustice. *Price,* 85 Nev. at 607, 460 P.2d at 841.

We are persuaded that there is no reasonable and just alterna-

---

[1]Instruction number 35 stated:

There may be more than one proximate cause of an injury. When negligent conduct of two or more persons contributes concurrently as proximate causes of an injury, the conduct of each of said persons is a proximate cause of the injury regardless of the extent to which each contributes to the injury. A cause is concurrent if it was operative at the moment of injury and acted with another cause to produce the injury.

tive other than to conclude that manifest injustice would result if we failed to recognize a failure on the part of the jury to understand the concept of proximate cause in reaching its verdict. We are therefore constrained to grant a new trial.[2]

## EMOTIONAL DISTRESS

The district court allowed Linda, in her capacity as guardian ad litem, to maintain a cause of action on behalf of David and Joshua for their emotional distress. However, as previously noted, Linda's claim for negligent infliction of emotional distress was dismissed on summary judgment. We conclude this was error.

Summary judgment is only appropriate where, after a review of the record viewed in a light most favorable to the non-moving party, there remain no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). On appeal, this court is "required to determine whether the trial court erred in concluding that an absence of genuine issues of material fact justified its granting of summary judgment." Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981).

In State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985), this court adopted the factors enumerated in Dillon v. Legg, 441 P.2d 912 (Cal. 1968), which provide a framework for determining whether the alleged emotional injuries were foreseeable. The factors embraced by *Eaton* are:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Eaton,* 101 Nev. at 716, 710 P.2d at 1377-78. We are unable to conclude as a matter of law that Linda's facts do not satisfy the above elements. Questions of material fact remain concerning the extent to which Linda was a percipient witness to the events surrounding her son's drowning or post-drowning, on-the-scene efforts to resuscitate the child. Moreover, a determination of the

---

[2]We, of course, express or infer no position concerning the degree of proximate cause attributable to Plaza, nor do we foreclose evidence, if any, of a supervening cause.

factual circumstances surrounding the tragic event is best reserved for the trier of fact.

## MEDICAL EXPENSES

Linda also insists that the district court erred in denying her the right authorized by NRS 12.080 to seek the recovery of Michael's medical expenses.[3] She further contends that she has a direct cause of action against Plaza for the medical expenses notwithstanding the provisions of NRS 41.085.[4]

The district court ruled that Linda, as a representative of

---

[3]In pertinent part, NRS 12.080 provides:

The father and mother'jointly, or the father or the mother, without preference to either, may maintain an action for the injury of a minor child who has not been emancipated, if the injury is caused by the wrongful act or neglect of another. . . . Any such action may be maintained against the person causing the injury, or, if the person is employed by another person who is responsible for his conduct, also against that other person.

[4]NRS 41.085 provides:

1. As used in this section, "heir" means a person who, under the laws of this state, would be entitled to succeed to the separate property of the decedent if he had died intestate.

2. When the death of any person, whether or not a minor, is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death, or if the wrongdoer is dead, against his personal representatives, whether the wrongdoer died before or after the death of the person he injured. If any other person is responsible for the wrongful act or neglect, or if the wrongdoer is employed by another person who is responsible for his conduct, the action may be maintained against that other person, or if he is dead against his personal representatives.

3. An action brought by the heirs of a decedent pursuant to subsection 2 and the cause of action of that decedent brought or maintained by his personal representatives which arose out of the same wrongful act or neglect may be joined.

4. The heirs may prove their respective damages in the action brought pursuant to subsection 2 and the court or jury may award each person pecuniary damages for his grief or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the decedent. The proceeds of any judgment for damages awarded under this subsection are not liable for any debt of the decedent.

5. The damages recoverable by the personal representatives of a decedent on behalf of his estate include:

(a) Any special damages, such as medical expenses, which the decedent incurred or sustained before his death, and funeral expenses; and

(b) Any penalties that the decedent would have recovered if he had lived, but do not include damages for pain, suffering or disfigurement of the decedent. The proceeds of any judgment for damages awarded under this subsection are liable for debts of the decedent unless exempted by law.

Michael's estate, could not recover for medical expenses because she was not named as a personal representative pursuant to NRCP 25(a)(1).[5]

We conclude that the district court erred in dismissing Linda's claim for Michael's medical costs which she, as the child's mother, incurred. "Where the injured person is a minor . . . and the costs of his care have been met by a parent, a direct right of action by such parent against the wrongdoer exists." Armstrong v. Onufrock, 75 Nev. 342, 347, 341 P.2d 105, 107 (1959) (citing NRS 12.080). Although the child's condition was the source of the medical expenses, Linda, as the adult mother of the child, actually incurred the costs generated over the course of Michael's hospitalization and medical treatment. Accordingly, Linda may pursue her claim for her son's medical expenses.

### RELATION BACK AND WRONGFUL DEATH

Linda's original complaint, filed on November 9, 1988, understandably omitted a claim for wrongful death since Michael was still alive on that date. Michael died on November 23, 1988. However, no attempt was made to amend the complaint to allege a claim for wrongful death until April 26, 1991, three days prior to trial.

Plaza contends that the wrongful death claim is precluded by NRS 11.190(4)(e).[6] The district court determined that Linda could amend her complaint and have it relate back to the original filing date pursuant to NRCP 15(c) which provides:

---

[5]NRCP 25(a)(1) provides:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

[6]NRS 11.190(4)(e) provides in pertinent part:

Actions other than those for the recovery of real property, unless further limited by specific statute, can only be commenced as follows:

. . . .
4. Within 2 years:
(e) Except as otherwise provided in NRS 11.215, an action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another. . . .

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The applicability of the relation back doctrine was discussed by this court in Scott v. Dep't of Commerce, 104 Nev. 580, 586, 763 P.2d 341, 345 (1988), as follows:

"If the original pleadings give fair notice of the fact situation from which the new claim for liability arises, the amendment should relate back for limitations purposes.

On the other hand, where an amendment states a new cause of action that describes a new and entirely different source of damages, the amendment does not relate back, as the opposing party has not been put on notice concerning the facts in issue."

*Id.* (quoting Nelson v. City of Las Vegas, 99 Nev. 548, 556, 665 P.2d 1141, 1146 (1983)).

Applying the straightforward language of Rule 15(c) to the facts of the instant case amply justifies the ruling of the district court. The facts eventuating in the death of Michael and a subsequent claim for wrongful death were identical to the facts alleged in the original complaint. The "new claim for liability," wrongful death, was based upon the violation of duty specified in the complaint filed before Michael's death. Plaza was fully informed of the factual basis for an eventual wrongful death claim through the original complaint. Moreover, Plaza's counsel filed the suggestion of death on the record after Michael died, thereby eliminating any conjecture as to whether Plaza had notice of Michael's demise prior to Linda's request to amend the complaint and add the wrongful death claim.

Rule 15(c) does preclude an amendment relating back in those instances where the amendment "states a new cause of action that describes *a new and entirely different source of damages . . . as the opposing party has not been put on notice concerning the facts in issue.*" (Emphasis added.) This provision of the rule is clearly inapplicable to the facts of the instant case. The source of damages for wrongful death remains identical to that described in the original complaint, i.e., the specified negligence of Plaza. The extent of Plaza's liability increased with Michael's demise, but the facts that placed Michael in a comatose state in the hospital were precisely the same as the facts relied upon as support for the wrongful death claim. Plaza had full notice of the facts in issue under the amendment. Thus, the concerns of Rule 15(c) were fully satisfied, and the district court correctly ruled

that the amendment would relate back to the filing of the original complaint. *See* Watts v. State, 566 P.2d 693 (Ariz.Ct.App. 1977).

After careful consideration of the remaining issues, we conclude that they are either without merit or need not be addressed.

For the reasons specified above, we reverse the judgment entered below pursuant to the jury's verdict and remand the matter for a new trial consistent with this opinion.[7]

---

[7]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.