1999 OK 95

**OKLAHOMA DEPARTMENT OF MINES, Plaintiff/Appellee,**

v.

**Roger DAHLGREN, Defendant,**

and

**Charles Roye, Deloris Roye, Kathy C. Roye, Trustee for the Alexis J. Roye Trust and Casey J. Roye Trust, and Katrina R. Roye, Intervenors/Appellants.**

No. 92608.

Supreme Court of Oklahoma.

Dec. 7, 1999.

Mark Secrest, Chief Legal Counsel, Caroleen Carman, Oklahoma Department of Mines, Oklahoma City, Oklahoma, for Appellee.

Mark K. Stonecipher, Brent M. Johnson, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Oklahoma, for Defendant.

Eric S. Gray, Thomas P. Goresen, Gray & Gorenson, Oklahoma City, Oklahoma, and Louis E. Striegel, Stigler, Oklahoma, for Intervenors/Appellants.

HARGRAVE, V.C.J.

¶ 1 The underlying action involves the reclamation of land in Haskell county, Oklahoma, upon which the Ryan # 2 strip coal mine is located. The only question that has been certified for immediate appeal is whether the trial judge correctly dismissed the intervenors' cross-claim[1] against the Oklahoma Department of Mines ("Department" or "ODM"), which attempted to force the Department to conduct reclamation at its own expense, over and above the bond forfeiture amounts. We hold that the trial judge correctly dismissed the cross-claim.

¶ 2 The Defendant, Roger Dahlgren (Operator), is the agent and former president of Sunset Sales, Inc., d/b/a K & R Coal Company, which conducted surface coal mining operations on property belonging to the Intervenors. The Oklahoma Coal Reclamation Act, 45 O.S.1991 § 742.1 et. seq., requires that the operator of a mine must, before being issued a permit to operate, present an acceptable reclamation plan and post a bond sufficient to cover the costs of reclamation. 45 O.S. §§ 745.5, 745.6. Reclamation is defined in the Act as:

> " . . . through the process of backfilling, regrading, topsoil replacement, re-utilization and re-vegetation activities, the bringing back of land to its approximate original contours and configuration, and resulting in an equal or better land use category, and shall be consistent with the existing surrounding environment." 45 O.S. § 742.2(37).

In this case, the coal company filed for bankruptcy before conducting reclamation of the land, and the Oklahoma Department of Mines, in separate actions not involved in this case, brought actions to forfeit the bonds.[2]

¶ 3 The Oklahoma Department of Mines also filed an action in district court seeking a permanent injunction against the defendant, as operator of the Ryan # 2 coal mine, for failure to reclaim the property. The suit recited that the Operator failed to comply with orders issued by the Department resulting from environmental performance standards inspections from January 7, 1987 to the time of filing the complaint. The Department's inspections resulted in violation No. 92–19–07 and cessation order No. 93–21–02(TVI), which cited the defendant for various violations of the Act and of the Department's regulations, including failure to eliminate unstable high-walls and complete backfilling and grading activities. The Department alleged that remedial actions had not been performed and that the environment was being harmed. The Department sought an injunction and asked that the Operator be ordered to perform the remedial action within 60 days.

¶ 4 The landowners of the affected property ("Intervenors") intervened as a matter of right, pursuant to 45 O.S. § 774(B)(1)(b), and asserted a counterclaim against the Operator for failure to reclaim the property as required by statute. They sought damages for the cost of reclaiming the land and punitive damages against the Operator. The Intervenors then sought leave to file a cross-claim against ODM in order to require ODM to conduct reclamation of the property at its own expense.[3]

¶ 5 The cross-claim is somewhat unclear. It first recites ODM's duties under the Act, such as approving and issuing permits based upon certain criteria, enforcing the requirements, inspecting the activities and requiring performance bonds in amounts sufficient to assure completion of the reclamation plan if

---

1. Intervenors' claim was referred to as a "cross-claim" throughout the proceedings before the trial court and we will continue to use that term in this opinion. 12 O.S. § 2014(G) provides:

 "A pleading may state as a cross-claim any claim by one party against any party who is not an opposing party arising out of the transaction or occurrence that is the subject matter either of the original action or of a claim therein or relating to any property that is the subject matter of the original action. A cross-

 claim may assert a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

2. *See,* cases No. 90,721 and 90,728, memorandum opinions of the Court of Civil Appeals, Division 2, 70 O.B.J. 498–99 (Feb. 6, 1999).

3. It appears to be undisputed that the amount of the bonds is insufficient to complete reclamation.

the work has to be performed by the Department.[4] They allege that ODM has "refused and failed to comply with the requirements of the Act and has failed to compel compliance of the operator on the Ryan # 2 mine." They believe that they are entitled to assert a claim against the Department under the citizen suit provision of the Oklahoma Coal Reclamation Act, to 45 O.S.1991 § 774, in order to compel the Department to complete the reclamation of the Ryan # 2 Coal Mine. The Intervenors sought an order directing ODM to fully complete reclamation of the Ryan # 2 coal mine and the affected lands, and for costs and attorney fees.

¶ 6 ODM filed a motion to dismiss Intervenors' cross-claim for failure to state a claim, arguing that Intervenors can state no facts entitling them to the requested relief because: 1) there is no authority for landowners to assert a cross-claim against ODM where ODM is diligently pursuing an action against the Operator; 2) that landowners failed to comply with § 774(B) of the citizen suit statute because they did not give the required sixty-day notice to the Department; 3) that ODM has no obligation or authority to reclaim the property in excess of the bond amounts; and 4) that ODM, while given power to enforce the Act and to compel compliance therewith, was not given the authority or the funds to initiate unilateral reclamation.

¶ 7 The trial judge granted ODM's motion to dismiss the cross-claim and subsequently denied Intervenors' application for a temporary restraining order and injunction. Intervenors sought reconsideration, or alternatively, certification of the cross-claim issue for immediate appeal. The issue was certified

and the action was retained by this Court for disposition. Intervenors filed motions to remove the case from the summary disposition docket and for oral argument. Both motions are denied.

¶ 8 Although Intervenors' allegations against ODM in the cross-claim are somewhat unclear, it is clear that the relief sought is to force the Department to complete reclamation of the property at its own expense. Their basis for seeking this relief seems to be that because the Department failed to require a sufficient bond, it should bear responsibility for completing reclamation. The Act, however, does not require the Department to complete reclamation under those circumstances. Intervenors rely solely on language contained in the bond section of the Act which requires that the bond shall be in an amount sufficient to complete reclamation if the work had to be performed by the Department in the event of forfeiture.[5] At most, this section implies that the bond forfeiture forms the basis for completing any such reclamation.

¶ 9 Inasmuch as Intervenors' cross-claim may seem to suggest that recovery is sought against ODM for negligence in failing to set an adequate bond, we would note that actions against government agencies for negligent performance of regulatory duties or for negligent inspection have not been permitted under the discretionary function exception of the governmental tort claims acts.[6] *See, for example, Krug v. Ohio Dept. of Natural Resources,* 100 Ohio App.3d 444, 654 N.E.2d 185 (1995) and *Scott v. Dept. of Commerce,* 104 Nev. 580, 763 P.2d 341 (1988). *See also, Brewer v. Independent School Dist.*

4. Title 45 O.S.1991 § 742.1 et seq.

5. 45 O.S. § 745.6(B) provides that the amount of the bond required for each bonded area shall depend upon the reclamation requirements of the approved permit, and shall reflect the probable difficulty of reclamation ... and shall be determined by the Department. The amount of the bond for coal mining shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the Department in the event of forfeiture....

6. The Oklahoma Governmental Tort Claims Act, title 51 O.S. Supp.1994
 § 155, specifically provides;

"The state or a political subdivision shall not be liable if a loss or claim results from: ...
5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees; ...
13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or person, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard;"

*No. 1*, 1993 OK 17, 848 P.2d 566, 570 (failure to inspect) and *Smith v. Oral Roberts University*, 732 P.2d 450 (Okla.1986) (failure to enforce an ordinance).

¶ 10 We are left with Intervenors' claim against the Department for reclamation of the property. Intervenors rely on the citizen suit provision of the Act, 45 O.S.1991 § 774. Section 774(A) allows any person having an interest that may be adversely affected to commence a civil action on his own behalf to compel compliance with the Act, subject only to the limitations of subsection B. Subsection 774(A)(1) permits citizen suits against any governmental instrumentality or other person in violation of the Act or any of the rules, regulations, orders or permits issued pursuant to the Act. This section has been interpreted in the federal mining act to mean persons or governmental entities that are *conducting* mining operations. *See, Oklahoma Wildlife Federation v. Hodel*, 642 F.Supp. 569, 570 (N.D.Okla.1986) (interpreting the citizen suit provision of the federal Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270(a)(1), to mean governmental entities or other persons conducting surface mining operations). No action under § 774(A)(1) may be commenced, however:

a) prior to sixty (60) days after the plaintiff has given notice in writing of the violation to the Department, and to any alleged violator, or, .

b) if the Department has commenced and is diligently prosecuting a civil action in a court of this state to require compliance with the provisions of this act, or any rule, regulation, order or permit issued pursuant to this act, *but in any such action in a court of this state any person*

*may intervene as a matter of right.* (emphasis added)

45 O.S.1991 § 774(B)(1).

It is the italicized language in § 774 B(1)(b) upon which Intervenors rely for the right to assert their cross-claim against the Department. Intervenors argue that because they are permitted to intervene as a matter of right in the Department's suit against the Operator, they should be able to assert any claims they have against the Department to compel compliance with the Act.

█ ¶ 11 Citizen suits against the Oklahoma Department of Mines are covered by § 774 A(2), however. This section only permits an action against the Department to compel compliance with the Act, *where there is alleged a failure of the Department to perform any act or duty under the Act which is not discretionary with the Department.* The relief provided in § 774(A)(2) is in the nature of mandamus—to compel the agency to perform its non-discretionary duties under the Act.

¶ 12 The right to bring an action against the Department is limited by subsection B(2), which provides that no action may be commenced against ODM "prior to sixty (60) days after the plaintiff has given written notice of such action to the Department," except in emergencies.[7] An affidavit by the Director of ODM states that at no time was any such notice received by the Department.

¶ 13 Federal cases have interpreted the citizen suit provisions of federal environmental laws[8] to authorize suits against: 1) governmental entities that are in violation of the act, 2) any person in violation of any requirement enacted pursuant to the act, or 3) government officials who are alleged to have failed to perform mandatory duties under the

---

7. [45 O.S.1991 § 774] B. No action may be commenced:

"2. Under paragraph 2 of Subsection A of this section prior to sixty (60) days after the plaintiff has given notice in writing of such action to the Department, in such manner as the Department shall by regulation prescribe, except that such action may be brought immediately after such notification in the case where the violation or order complained of constitutes an imminent threat to the health or safety of the plaintiff or would immediately affect a legal interest of the plaintiff."

8. Many federal environmental laws contain citizen suit provisions: the Clean Air Act, the Federal Water Pollution Control Act, the Toxic Substances Control Act, RCRA, the Noise Control Act, the Safe Drinking Water Act, the Endangered Species Act, the Deep Water Port Act, the Outercontinental Shelf Land Act, the Surface Mine Control and Reclamation Act, and the Marine Protection, Research, and Sanctuaries Act. *Roe v. Wert*, 706 F.Supp. 788, 791 (W.D.Okla. 1989)

Act. *See, Roe v. Wert,* 706 F.Supp. 788, 791 (W.D.Okla.1989). *See also, Oklahoma Wildlife Federation v. Hodel,* 642 F.Supp. 569, 570 (N.D.Okla.1986).

 ¶ 14 Under the citizen suit provision of the Oklahoma Coal Reclamation Act, the Department may only be compelled to perform its mandatory, or non-discretionary duties under the Act. While the Department has a mandatory duty to enforce the Act, the *method* of enforcement is discretionary with the Department. It would be premature for this Court to tell the Department in advance how it must carry out its enforcement duty. In *Oklahoma Wildlife Federation v. Hodel,* 642 F.Supp. 569, 570 (N.D.Okla.1986), interpreting the citizen suit provision of the federal Surface Mining Control and Reclamation Act, the court stated:

> "The Court has no continuing authority over the Secretary or the regulatory agency once they have accepted the mandatory duty to act, otherwise the Court would be taking a premature review of the merits of the Secretary's exercise of its enforcement discretion. The Court's jurisdiction under § 1270(a)(2) is limited to compelling the Secretary to take some action."

¶ 15 Federal cases interpreting citizen suit provisions of environmental acts make clear that citizen suits against the agency charged with enforcement of the acts are proper only if the federal, state and local agencies fail to exercise their enforcement responsibility. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 890 F.Supp. 470, 486 (D.S.C.1995), quoting from *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). The state enforcement agency must be given great deference to proceed in a manner it considers in the best interests of all parties involved. *Arkansas Wildlife Fed'n v. ICI Americas Inc.,* 842 F.Supp. 1140, 1147 (E.D.Ark.1993), *aff'd,* 29 F.3d 376 (8th Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1094, 130

L.Ed.2d 1062 (1995). Deference to governmental enforcement agencies is deemed appropriate because such acts delegate the primary enforcement responsibility to designated state and federal agencies. The requirement that a citizen must give notice sixty days before bringing a private enforcement suit was designed to give the governmental agencies the "first shot" at enforcement. *Friends of the Earth,* 890 F.Supp. at 486. The United States Supreme Court stated in *Gwaltney, supra,* that "the citizen suit is meant to supplement rather than to supplant governmental action." 484 U.S. at 60, 108 S.Ct. at 383. Appropriate limitations on citizen suits generally "allow for smoother operation of ordinary enforcement mechanisms" and encourage out-of-court settlements between agencies and polluters. *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 777 F.Supp. 173, 179, 186 (D.Conn.1991), *aff'd in part, rev'd in part,* 989 F.2d 1305 (2nd Cir.1993).

¶ 16 The citizen suit provision of the Oklahoma Coal Reclamation Act permits an action to compel the Department to act. The Department has complied with its mandatory duty by forfeiting the bonds and bringing suit against the Operator to compel the Operator to reclaim the land, as provided by the Act.[9] The attempt to force the Department to complete reclamation at its own expense is not provided for in the Act and is beyond the scope of its duties under the Act. The Act does not create any new causes of action against the Department, nor does it permit private citizen suits that complain of discretionary acts performed by the Department.

 ¶ 17 The intent of the citizen suit statute is to allow a citizen to "step into the shoes" of the enforcement agency to file suit where the Department fails to act or when, having acted, fails to diligently pursue enforcement against the operator. If the Department is not diligently pursuing its suit under the Act, affected persons can file suit

---

9. Title 45 O.S. § 780 provides that the Department may request the Attorney General to institute a civil action for relief, including injunctions, restraining orders or any other appropriate orders in district court where the permittee has violated or failed to comply with any order or decision issued by the Department under the act or hinders or delays the Department in carrying out he provisions of the act. The action in the instant case was filed by ODM's legal department.

against *violators* to enforce compliance with the Act. When the Department has acted and is diligently pursuing the suit, an affected person is limited to intervening in the Department's action in order to assert any claim that he or she may have against the violator.

¶ 18 The Intervenors in the case at bar seek a remedy that is not provided by the Act: they seek to compel the Department to conduct reclamation at its own expense. There is no provision in the Coal Mining Reclamation Act requiring the Department to reclaim the property in excess of the forfeited bond amounts. The Act states only that the bond should be set in an amount sufficient to ensure that the Department could do the work in the event of bond forfeiture. Section 786(D) of the Act provides that if the chief mine inspector revokes the permit, the permittee shall immediately cease surface coal mining operations on the permit area and shall complete reclamation within a period specified by the Chief Mine Inspector, or the Chief Mine Inspector shall declare as forfeited the performance bonds for the operation.

¶ 19 Intervenors attempt to argue that ODM is not "diligently pursuing" its suit against the Operator, and that this presents a question of fact. This argument is without merit. The "diligent pursuance" issue is relevant only to the private citizen's right to bring an action against *violators* of the Act. Intervenors are not arguing that they should be able to bring their own action against the Operator. In any event, intervenors' argument is not that the Department's suit is not being diligently pursued, but rather that the Department should have acted sooner. They say that if ODM had diligently prosecuted the Operator prior to Operator's bankruptcy, then the Operator would not have been able to avoid conducting the reclamation operations it was required to perform. Landowners, however, could have filed suit against the Operator or against the Department at any time by giving the written notice required by the Act. The Act requires only that the Department have filed and be diligently pursuing an action to compel compliance with the Act. Failure of the Department to file suit at some earlier time is not an issue.

¶ 20 The Intervenors have shown no set of facts entitling them to the relief sought against the Department. The trial court's order dismissing the Intervenors' cross-claim is affirmed.

**ORDER AFFIRMED.**

¶ 21 CONCUR: SUMMERS, C.J., HODGES, LAVENDER, OPALA, WATT, BOUDREAU, JJ.

¶ 22 CONCURS IN RESULT: KAUGER, J.

