141 Nev., Advance Opinion 30

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KATY BOURNE, INDIVIDUALLY; AND KATY BOURNE AS NATURAL MOTHER AND GUARDIAN OF DAVID BOURNE, JR., A MINOR,
Appellants,
vs.
ZIDRIECK VALDES, M.D.; AND ZIDRIECK P. VALDES, MD LTD.,
Respondents.

No. 85812



FILED

JUN 12 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in a medical malpractice action. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Reversed and remanded.*

Heaton & Associates and Jared F. Herling, Las Vegas,
for Appellants.

Homan, Stone & Rossi and Lynn V. Rivera, Reno,
for Respondents.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, LEE, J.:

This matter is one of first impression in Nevada and asks whether we should adopt the "suicide rule" as a complete defense to claims

of medical malpractice.[1]  The instant medical malpractice action alleged that a medical provider's negligence in treating his patient caused the patient to die by suicide.  The district court granted summary judgment in favor of the medical provider, finding that the patient's suicide precluded liability as a matter of law.  However, Nevada's professional negligence statutes, NRS Chapter 41A, do not preclude a medical provider from being held liable for a patient's suicide, and we have never held that such a preclusion exists.  We decline to adopt a rule that a patient's suicide relieves a medical provider of liability for the patient's death.  We instead hold that the determination as to whether a medical provider is liable for a patient's injuries must be resolved under established medical malpractice law.

Here, the district court granted summary judgment based on the incorrect rationale that liability for medical malpractice was precluded as a matter of law.  The district court rationalized that because the patient was not under the custody or control of the medical provider when the patient died by suicide, the provider was relieved of liability.  We reject this reasoning and reverse the summary judgment, remanding the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Respondent Dr. Zidrieck Valdes diagnosed his patient, David Bourne, with chronic anxiety, major depressive disorder, and chronic low back pain in 2015.  Valdes prescribed Bourne two medications: Klonopin (a

---

[1]Having considered the petition for en banc reconsideration in this matter, as well as the response thereto, we have determined that reconsideration is warranted. *See* NRAP 40A(a).  Accordingly, the petition for en banc reconsideration is granted.  This court's previous opinion in this matter, *Bourne v. Valdes*, 140 Nev., Adv. Op. 74, 559 P.3d 361 (Nov. 27, 2024), is hereby withdrawn.

benzodiazepine) and an opioid. In May 2019, Valdes informed Bourne that a new Center for Disease Control guideline recommended that a patient not be prescribed benzodiazepines and opioids concurrently. Consequently, Valdes took Bourne off Klonopin and prescribed Bourne Buspar, an anti-anxiety medication. The record indicates that, at some point thereafter, Bourne's wife overheard Bourne inform Valdes that he was having withdrawal symptoms as a result of being taken off Klonopin. Valdes then referred Bourne to an in-patient drug treatment facility, but Bourne refused to go.

In August 2019, Bourne reported to Valdes that he was experiencing "unbearable" work-related stress. In response, Valdes gave Bourne a half-dose emergency prescription of Klonopin. In Bourne's subsequent visits with Valdes, medical notes reflect that Bourne "displayed no physical or mental symptoms of withdrawal arising from the Klonopin. To the contrary, [Bourne] reported that the Buspar prescribed to him was working for his anxiety and helping him cope" and indicated that he did not have suicidal ideations. Medical notes further indicate that Bourne "exhibited no signs or symptoms of being depressed or suicidal."

In November 2019, shortly after one of his medical visits with Valdes, Bourne died by suicide. In his suicide note, Bourne wrote, "my mind is gone all from being prescribed a drug I didn't even need . . . the Dr. stopped prescribing without tapering . . . ." At the time of his death, Bourne had therapeutic levels of both Xanax and an opioid in his system. Valdes had not prescribed Bourne Xanax and was unaware that Bourne was taking it.

Following Bourne's death, Bourne's wife and minor child (collectively, appellants) filed suit against Valdes for medical malpractice,

SUPREME COURT
OF
NEVADA

(O) 1947A

3

alleging that Valdes' negligence in failing to taper Bourne off Klonopin caused Bourne to die by suicide. Appellants' medical expert, Dr. Donald A. Misch, opined *inter alia* that Valdes deviated from the standard of care when he simultaneously prescribed an opioid and a benzodiazepine, and when he took Bourne off Klonopin without tapering the dosage. Dr. Misch further opined that Valdes' actions contributed to Bourne's suicide.

Valdes filed a motion for summary judgment, which the district court denied. Later, Valdes filed a second motion for summary judgment, arguing that medical providers cannot be held liable for a patient's suicide because suicide is a superseding intervening cause that severs the medical provider's liability. The district court found that this "suicide rule," while not addressed in Nevada law, is the majority rule adopted by most states and precludes liability for a patient's suicide where the patient was not in the control or custody of the medical provider. Applying the suicide rule, the district court determined that Valdes could not be held liable for Bourne's suicide as a matter of law because Valdes did not have custody or control of Bourne and could not have intervened and stopped Bourne from dying by suicide. The district court granted summary judgment in favor of Valdes, and appellants now appeal.

## DISCUSSION

The sole question before us is whether a medical provider may be liable for negligence resulting in a patient's suicide where the patient was not in the control or custody of the medical provider. Appellants contend that the district court, in applying the suicide rule, disregarded Nevada jurisprudence allowing patients to recover for foreseeable consequences proximately caused by a medical provider's negligence. Appellants argue that the district court incorrectly found that a majority of states have adopted a rule barring a tortfeasor's liability for suicide.

Supreme Court
of
Nevada

(O) 1947A

4

Appellants further point out that the few cases relied on by the district court did not involve medical malpractice and were not about "custody or control." In sharp contrast, Valdes asserts that the suicide rule is nearly universal and urges this court to apply it here and to affirm the district court's decision. Valdes further argues that appellants cannot recover as a matter of law because Bourne's suicide was not foreseeable.

We review a district court's grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). When deciding a summary judgment motion, all evidence must be viewed in a light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

A claim of medical malpractice is a type of "professional negligence" and is governed by the statutes codified in NRS Chapter 41A. In rendering medical treatment, a medical provider owes a duty "to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." NRS 41A.015. A successful cause of action for medical malpractice in Nevada requires a showing that the medical provider breached an accepted standard of care and that this breach was both the actual and the proximate cause of the plaintiff's injury or death, resulting in damages. *See* NRS 41A.100; *Prabhu v. Levine*, 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996). Nothing in Nevada's professional negligence statutes expressly or implicitly precludes liability for a patient's death where the patient died by suicide. Nor is there any caselaw in Nevada holding that liability may not be imposed on a medical provider for a patient's death by suicide.

Valdes points to numerous decisions by other jurisdictions in support of his position that the suicide rule is nearly universal. However, only three of the cases cited relate to medical malpractice, and even these cases conflict with Valdes' argument—instead supporting appellants' position that suicide does not preclude a medical provider's liability for their malpractice.[2]

We conclude that a patient's suicide does not preclude liability for medical malpractice as a matter of law. Rather, like any other action alleging that a medical provider's negligence caused injury or death to a patient, the ordinary principles of medical malpractice apply. Consistent with existing Nevada medical malpractice law, a medical provider who is alleged to have provided negligent care to a patient owes a duty of care to that patient, regardless of whether the medical provider has control over, or custody of, the patient. If the medical provider's conduct is proven to fall below the standard of care, then "the crucial inquiry is whether the defendant's negligent conduct led to or made it reasonably foreseeable that the deceased would commit suicide." *White v. Lawrence*, 975 S.W.2d 525, 530 (Tenn. 1998). If the patient's suicide is a foreseeable consequence of the

---

[2]*See Edwards v. Tardif*, 692 A.2d 1266, 1270 (Conn. 1997) ("[W]e hold that a physician may be liable for a patient's suicide when the physician knew or reasonably should have known of the risk of suicide and the physician's failure to render adequate care and treatment proximately causes the patient's suicide."); *see also Truddle v. Baptist Mem'l Hosp.–DeSoto, Inc.*, 150 So. 3d 692, 697 (Miss. 2014) (holding that "the plaintiff must show that the defendant committed an intentional act that led to an irresistible impulse to commit suicide in order to prevail"); *see also Runyon v. Reid*, 510 P.2d 943, 946, 950 (Okla. 1973) (holding that a psychiatrist might be liable for the suicide of a patient under certain circumstances and that summary judgment is inappropriate if reasonable minds may disagree based upon the facts presented).

medical provider's negligence, then the medical provider may be held liable. *See* Patricia C. Kussmann, Annotation, *Liability of Doctor, Psychiatrist, or Psychologist for Failure to Take Steps to Prevent Patient's Suicide*, 81 ALR 5th 167, § 4 (2000) ("For a doctor to be liable for a patient's suicide, the suicide must have been foreseeable."). However, where the patient's suicide is not foreseeable, then the suicide is a superseding intervening cause, severing the causal chain and relieving the medical provider of liability for their negligence. *White*, 975 S.W.2d at 530.

Here, through expert testimony, appellants demonstrated a prima facie case for medical malpractice. Dr. Misch opined that Dr. Valdes departed from the standard of care when he simultaneously prescribed an opioid and a benzodiazepine, and when he failed to taper Bourne off Klonopin. He therefore concluded that Valdes' departure from the standard of care caused Bourne to suffer withdrawals, which led to Bourne's suicide. The district court did not analyze whether Valdes' conduct breached the standard of care or whether Bourne's suicide was unforeseeable and thereby a superseding intervening cause alleviating Valdes of any liability for his alleged negligence. Thus, the district court erred when it granted Valdes' motion for summary judgment.

## CONCLUSION

A patient's suicide does not, as a matter of law, prevent a medical provider from being liable for medical malpractice. The district court erroneously found as a matter of law that Valdes could not be liable for Bourne's death by suicide because Valdes did not have control or custody over Bourne and therefore could not have stopped the suicide. Because appellants established a prima facie medical malpractice claim, summary

judgment was improper without further analysis of whether there was a genuine issue of material fact regarding the suicide's foreseeability. We therefore reverse the district court's order and remand the case for further proceedings.

_____, J.
Lee

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., with whom PICKERING, J., agrees, dissenting:

Suicide is formally defined as "the act or an instance of ending one's own life voluntarily and intentionally." Merriam-Webster, https://www.merriam-webster.com/dictionary/suicide (last visited May 21, 2025). Suicide is tragic, often complex, and can result in profound loss for loved ones. Death by suicide, however, is a voluntary and intentional act.

At common law, suicide traditionally was viewed as "a new and independent agency which breaks the causal connection between the wrongful act and the death" and, therefore, "an unforeseeable, intervening cause of death" precluding recovery. *State for Use & Benefit of Richardson v. Edgeworth*, 214 So. 2d 579, 586 (Miss. 1968) (highlighting several cases that took this view of suicide); *see generally* C.T. Drechsler, *Civil Liability for Death by Suicide*, 11 A.L.R.2d 751 § 4[a] (originally published in 1950) (referring to the suicide rule as a "practically unanimous rule"). Over time, the introduction of narrow exceptions has refined the jurisprudence surrounding nonliability for wrongful death after a suicide. Such exceptions include when the defendant intended to cause serious mental distress or physical suffering; when the decedent commits suicide due to an uncontrollable impulse caused by the defendant's wrongful act; and, in the medical malpractice context, when the healthcare provider maintains a degree of custody or control over the patient. *See Tate v. Canonica*, 5 Cal. Rptr. 28, 36 (Ct. App. 1960); *Edwards v. Tardif*, 692 A.2d 1266, 1271 (Conn. 1997); *Truddle v. Baptist Mem'l Hosp. DeSoto, Inc.*, 150 So. 3d 692, 698 (Miss. 2014). The majority suggests that the fact the medical malpractice statutes in NRS Chapter 41A do not reference the common law suicide rule means that they reject it, but the opposite is true. Statutes in Nevada are construed in harmony with the common law, not in opposition to it. *See*

NRS 1.030 ("The common law of England, so far as it is not repugnant to or in conflict with the Constitution and laws of the United States, or the Constitution and laws of this State, shall be the rule of decision in all the courts of this State.").

The facts of the present case are largely undisputed. Dr. Valdes began treating Bourne in 2015 for chronic anxiety, major depressive disorder, and chronic low back pain. Valdes prescribed Klonopin and an opioid. In May 2019, following updated guidance from the Centers for Disease Control, Valdes altered Bourne's medication combination and stopped prescribing Klonopin, replacing it with Buspar. In August 2019, Bourne reported to Valdes that his job was causing him unbearable stress, and Valdes prescribed an emergency dose of Klonopin to help him cope. During subsequent visits in September and October, Bourne reported that the Buspar was effectively treating his anxiety and he did not have suicidal ideations. Valdes noted that Bourne displayed no physical or mental symptoms of Klonopin withdrawal. At the time of Bourne's death, he had Xanax in his system, a medication with known risks of increased suicidal ideation, which Valdes had not prescribed him. Following his death, Bourne's wife confirmed to the police that he had not previously discussed suicide with her and that she did not know he was suicidal.

Though devastating, the facts of this case underscore the reasoning behind the widely adopted rule that, absent an exception, death by suicide is an independent act that breaks the causal chain. Even if Valdes's decision to stop prescribing Klonopin to Bourne was negligent, this action occurred six months—and many superseding events—prior to Bourne's death. Thus, the connection between Valdes's alleged negligent conduct and Bourne's death is remote and tenuous. For the foregoing

reasons, I believe that Nevada should adopt the suicide rule and the well-reasoned exceptions. Further, because none of the exceptions are present here, I would affirm the district court's grant of summary judgment. Therefore, I respectfully dissent.

_____, J.
Stiglich

I concur:

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A